James A. RHINEBARGER, Michael L. Pershing, J. Keith Gill, and Steven W. Romack, On behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

Robert D. ORR, Governor, State of Indiana; Thomas A. Beasley, Director of Indiana State Personnel Department; John T. Shettle, Superintendent, Indiana State Police Department; State of Indiana; and, Indiana State Police Department, Defendants–Appellees.

No. 87–1738.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1987.

Decided Feb. 4, 1988.

Rehearing and Rehearing En Banc Denied March 8, 1988.

B. Keith Shake, Henderson Daily Withrow & Devoe, Indianapolis, Ind., for plaintiffs-appellants.

David Michael Wallman, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WILL, Senior District Judge.*

BAUER, Chief Judge.

On February 19, 1985, the United States Supreme Court addressed for the third time the applicability of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216, to the states. *Garcia v. San Antonio Metro. Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). In round three, the Court held that the commerce clause empowers Congress to enforce the provisions of the FLSA against the states, thus overruling *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), which, in turn, had previously overruled *Maryland v. Wirtz,* 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). On October 15, 1985, the plaintiffs, Indiana state police officers, filed a complaint seeking to recover overtime compensation pursuant to the FLSA, 29 U.S.C. § 207. One month later, Congress amended the FLSA to read: "No State ... shall be liable under section 16 of the Fair Labor Standards Act of 1938 for a violation ... of such Act occurring before April 15, 1986...." Pub.L. No. 99–150, *reprinted in* 1985 U.S. CODE CONG. & AD.NEWS, 99 Stat. 787. The district court, 657 F.Supp. 1113, found that this amendment barred the plaintiffs' claim and that the amendment passed constitutional muster. Plaintiffs appeal and we affirm.

---

* The Honorable Hubert L. Will, Senior Judge of the United States Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

Plaintiffs seek to recover compensation for their overtime work between the time of the *Garcia* opinion up until April 15, 1986. It is undisputed that during this period, plaintiffs worked in excess of forty hours per week without receiving overtime compensation under the FLSA. Plaintiffs claim that they are entitled to overtime pay for work during this period because they relied on the Supreme Court's opinion in *Garcia* and began working overtime with the reasonable expectation of receiving compensation for this work as required by the FLSA.[1] They argue further that the 1985 FLSA Amendment· is unconstitutional because it "completely upset" this reliance in violation of the due process clause. U.S. Const.Amend. V.

Although we doubt whether plaintiffs' reliance on *Garcia* rises to the level of a constitutionally protected property interest, we need not decide this thorny issue in order to resolve this case. Rather, following the precedent of the Supreme Court, we conclude that the 1985 FLSA Amendment is constitutional because it enacts a rational legislative purpose in a manner that is neither harsh nor oppressive. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

It is well established that congressional legislation "adjusting the burdens and benefits of economic life" are presumed constitutional and that "the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892 49 L.Ed.2d 752 (1976) (citations omitted). This strong def-

erence to Congress's national economic policy applies as well to retroactive legislation as long as "the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means,...." *R.A. Gray*, 467 U.S. at 729, 104 S.Ct. at 2717–18. This is so even if the legislation readjusting rights and burdens "upsets otherwise settled expectations." *Id.* at 729, 104 S.Ct. at 2718 (citing *Turner Elkhorn*, 428 U.S. at 16, 96 S.Ct. at 2893). This does not mean, however, that "what Congress can legislate prospectively it can legislate retrospectively. The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." *Turner Elkhorn*, 428 U.S. at 16–17, 96 S.Ct. at 2893. Nevertheless, congressional legislation meets the test of due process if "the retroactive application of the legislation is itself justified by a rational legislative purpose." *R.A. Gray*, 467 U.S. at 730, 104 S.Ct. at 2718.[2]

Plaintiffs have failed to meet their burden of showing that the 1985 FLSA Amendment is irrational. Plaintiffs make little effort to argue that the 1985 Amendment does not fulfill a legitimate and rational legislative purpose. The Senate Report to the Amendment explains the purpose of the retroactive provisions: "The Committee has deferred application of the FLSA overtime provisions until exactly one year after the mandate in *Garcia* so that state and local governments may make necessary adjustments in their work practices, staffing patterns, and fiscal priorities." S.Rep. No. 99–159 at 15, 99th Cong., 1st

---

**1.** Plaintiffs readily concede that they are not entitled to any compensation for overtime work performed before the Supreme Court decided *Garcia*.

**2.** Plaintiffs invite us to engage in a four-prong inquiry developed by this Circuit in *Nachman v. Pension Benefit Guaranty Corporation*, 592 F.2d 947 (7th Cir.1979), *aff'd on statutory grounds*, 446 U.S. 354, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). We decline to do so. In *R.A. Gray*, the Supreme Court rejected the *Nachman* test for reviewing the constitutionality of retroactive legislation under the due process clause, although it refused to decide whether the factors

discussed in *Nachman* may be relevant in determining whether retroactive legislation is rational. 467 U.S. at 727 n. 6, 104 S.Ct. at 2716 n. 6. The Supreme Court concluded that the *Nachman* test was premised on a contract clause analysis rather than on a due process one. *Accord, Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1262–66 (7th Cir.1983) (rejecting the *Nachman* contract clause analysis approach in favor of the *Turner Elkhorn* due process approach). To the extent we believe these *Nachman* factors are still relevant to this analysis, we shall discuss them indirectly below.

Sess. 2, *reprinted in,* 1985 U.S. CODE CONG. & AD.NEWS 651, 663.[3] Thus we conclude that Congress acted for the rational purpose of protecting the fiscal integrity of the states and their political subdivisions.

Plaintiffs argue that the Amendment is irrational because it is "particularly harsh and oppressive" and cite *R.A. Gray,* 467 U.S. at 733, 104 S.Ct. at 2720 and *Welch v. Henry,* 305 U.S. 134, 147, 59 S.Ct. 121, 125, 83 L.Ed. 87 (1938). In *R.A. Gray,* however, the Court concluded that this "standard does not differ from the prohibition against arbitrary and irrational legislation that we clearly enunciated in *Turner Elkhorn.*" 467 U.S. at 733, 104 S.Ct. at 2720. Following the Supreme Court's lead, we also treat these as the same standard. Most legislation adversely affects some while benefitting others; laws are "harsh and oppressive" in a constitutional sense only when Congress enacts them with an irrational or arbitrary purpose.

The *Garcia* decision posed a serious dilemma for Congress: how to achieve the desired results of the FLSA without financially overburdening the states. Congress enacted the FSLA to guarantee certain rights and benefits to all workers, including overtime compensation. In *Wirtz,* the Supreme Court decided that Congress could enforce the FLSA against the states; this decision was overruled in *National League of Cities,* which held that the FLSA amendments were unconstitutional to the extent that they interferred with the traditional governmental functions of the states. Ten years later, the Supreme Court reversed itself again, paving the way for state employees to become eligible for certain benefits under the FLSA. Although anxious to provide these benefits, Congress also feared the drastic financial impact

---

**3.** The Senate Report discussed this purpose in detail:

> In seeking to guarantee a minimum standard of living for all working Americans, the FLSA has been heralded as one of our most fundamental efforts to direct economic forces into socially desirable channels. By 1974, FLSA coverage extended to three-fourths of the nation's employed nonsupervisor labor force; ... but most state and local government employees only became covered as of the Supreme Court's *Garcia* decision in February 1985. The Committee is not retreating from the principles established by Congress in the 1966 and 1974 FLSA amendments. The rights and protections accorded to employees of the federal government and the private sector also are extended to employees of states and their political subdivisions.
>
> At the same time, it is essential that the particular needs and circumstances of the States and their political subdivisions be carefully weighed and fairly accommodated. As the Supreme Court stated in *Garcia,* "the States occupy a special position in our constitutional system." Under that system, Congress has the responsibility to ensure that federal legislation does not undermine the States' "special position" or "unduly burden the States." In reporting this bill, the Committee seeks to discharge that responsibility and to further the principles of cooperative federalism.
>
> In particular, in the wake of *Garcia,* the States and their political subdivisions have identified several respects in which they would be injured by immediate application of the FLSA. This legislation responds to these concerns by adjusting certain FLSA principles with respect to employees of states and their political subdivisions and by deferring the effective date of certain provisions of the FLSA insofar as they apply to the States and their political subdivisions.
>
> The Committee recognizes that the financial costs of coming into compliance with the FLSA—*particularly the overtime provisions of section 7*—are a matter of grave concern to many states and localities. We have received extensive testimony on this subject from representatives of state and local governments and organized labor. Although the testimony reflects sharp disagreements as to the nature and context of FLSA compliance costs, the Committee concludes that states and localities required to comply with the FLSA will be forced to assume additional financial responsibilities which in at least some instances could be substantial.
>
> Jurisdictions which had relied for a decade upon the exemptions accorded under *National League of Cities* would be required to meet FLSA standards immediately under *Garcia.* Although many jurisdictions commendably and successfully have undertaken to do so, others have expressed an urgent need for leadtime in which to reorder their budgetary priorities while maintaining fiscal stability. *As the Committee did under its 1974 amendments, it has again allowed for lead-time for state and local governments to comply with the FLSA requirements.*

S.REP. No. 99–159 at 7–8, 99th Cong., 1st Sess. 2, *reprinted in* U.S. CODE CONG. & AD.NEWS, 651, 655–56 (1985) (emphasis added).

*Garcia* might have on the states. Consequently, Congress provided a grace period for the states and local governments in which measures could be taken to enforce the inactive FLSA without jeopardizing their economic viability. Congress chose to "spread the costs," *Turner Elkhorn,* 428 U.S. at 18, 96 S.Ct. at 2893, of the implementation of the dormant FLSA among the various employees across the nation rather than placing the burden on the treasuries of the states and their taxpayers. Congress made this difficult, but rational, choice after hearing extensive and heated testimony from all interested parties.[4] It is not this court's role to evaluate Congress's wisdom in deciding to place the burden of *Garcia* on a small percentage of employees for a short period of time instead of threatening the financial stability of states and local governments. *See Turner Elkhorn,* 428 U.S. at 18–19, 96 S.Ct. at 2893–94.

Plaintiffs make a great deal out of their "reliance expectations." Although we do not address whether these "expectations" rise to the level of a constitutionally protected property interest, we do note that the states and local governments also had certain reliance interests upset by *Garcia.* Many public officials negotiated contracts with their employees in reasonable reliance on *National League of Cities* and Congress has sought to cushion them, "their taxpayers and ... the system at large" from the harsh result of *Garcia. Kartevold v. Spokane County Fire Protections,* 625 F.Supp. 1553, 1559 (E.D.Wash.1986).

The due process rationality test does not require the courts to second-guess the desirability or value of legislative amendments; this is a distinctively legislative function. Plaintiffs ask us to reassess the judgment of Congress in adjusting the burdens and costs of the FLSA. The due process clause, however, only requires us to review the rationality of the legislation's purpose. Congress enacted the 1985 FLSA Amendment, knowing full well that it would prevent some state employees from receiving overtime compensation for a

short period of time, in order to allow the states to maintain fiscal stability. Given this rational, legitimate purpose, we conclude that the plaintiffs have failed to show that the 1985 FLSA Amendment allowing states a grace period after *Garcia* is irrational, harsh, or oppressive. We hold, therefore, that this economic legislation is constitutional under the due process clause.

The judgment of the district court is

AFFIRMED.

---

**4.** "The legislative history reveals that the amendments ... represented an accommodation between the interests of governmental employees and their employers." *Blanton v. City of Murfreesboro,* 658 F.Supp. 1540, 1541 (M.D.Tenn. 1987).