D A & S OIL WELL SERVICING, INC.,
a corporation, Appellant,

v.

James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Appellee.

No. 5965.

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1958.

U. M. Rose, Hobbs, N. M. (Lawrence H. Johnson, Hobbs, N. M., was with him on the brief), for appellant.

Bessie Margolin, Asst. Solicitor, and Norman D. Schwartz, Atty., U. S. Dept. of Labor, Washington, D. C. (Stuart Rothman, Solicitor, Washington, D. C., and Earl Street, Regional Atty., Dallas, Tex., were with them on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

The Secretary of Labor brought this action to enjoin the defendant-employer from violating the provisions of Section 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended.[1] His complaint was based upon the employer's failure to pay additional compensation to employees who drove trucks which transported equipment and other employees to and from the place where the work was performed. The case was submitted to the trial court on an agreed statement of facts, and a permanent injunction was granted. The defendant contends that this driving time was "preliminary" and "postliminary" riding or traveling to and from the actual place of performance of the employees' principal work and that under the provisions of the Portal-to-Portal Act of 1947, they are not entitled to be compensated therefor. 29 U.S.C.A. § 251 et seq.

Defendant is a New Mexico corporation, and its principal business is servicing producing oil wells and "swabbing in" wells which have not been placed on production or on which production has been interrupted. The main base of its operations is in Hobbs, New Mexico, but the services are performed at the different well sites, the majority of which are located less than thirty miles from the defendant's yards in Hobbs. Some of the equipment used in performing these services consists of pulling and swabbing units and tanks containing butane gas which is used as fuel for the units while in use at the well sites. The units, weighing 30,000 pounds or more, are mounted on the beds of large trucks. The butane gas tanks of 109 gallon capacity are mounted on pickup trucks.[2] The pickups also, at times, transport other equipment to and from the field which could be economically transported otherwise. With certain exceptions, a pulling and swabbing unit and a pickup truck are driven on each working day, before and after regular working hours, to and from each well site being serviced. A crew consisting of one unit operator and one or more "floor hands" is employed to perform the service. Normally the operator drives the truck on which the unit is mounted, and a floor hand drives the pickup. It is not regarded as necessary to keep the pickup in the field

---

1. 29 U.S.C.A. § 215(a) (2) and § 215 (a) (5). The violations relate to the minimum wage and record-keeping provisions of Section 6 and Section 11, respectively, of the Fair Labor Standards Act of 1938, as amended.

2. In the past the pickups were used solely for transporting employees, but at the time this action was brought, employees, butane tanks, and other necessary equipment were transported by the pickups.

to enable the work to be performed but, as a matter of practice, it is kept there to enable the crew to make the trip home. There is room in both trucks for the other employees to ride to and from the well site. The driving of the trucks is an activity which is performed by the drivers in addition to their duties at the well site during regular working hours. It was defendant's practice to compensate all members of a crew for the time spent in traveling from its base to the well site,[3] but no compensation was being made for the return trip.

The question presented is limited to whether such driving activities of the drivers of both types of trucks falls within the exclusion of Section 4 of the Portal-to-Portal Act, which provides, in part:

"* * * no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

"(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

"(2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."—29 U.S.C.A. § 254(a).

In construing that section, the Supreme Court of the United States, in Steiner v. Mitchell, 350 U.S. 247, 255–256, 76 S.Ct. 330, 335, 100 L.Ed. 267, said:

"On the whole it is clear, we think, that while Congress intended to outlaw claims prior to 1947 for wages based on all employee activities unless provided for by contract or custom of the industry, including, of course, activities performed before or after regular hours of work, it did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an integral part of and indispensable to their principal activities. Had Congress intended the result urged by petitioner, the very different provisions of Sections 2 and 4 would have been unnecessary; Section 2 could have been given prospective as well as retroactive effect.

"We, therefore, conclude that activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a) (1)."

See also Mitchell v. King Packing Co., 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282. In arriving at its conclusion, the Supreme Court discussed at length and relied upon the legislative history of the Portal-to-Portal Act. The legislative history referred to in these cases is applicable with equal effect to the facts of this case. See appendix, Steiner v. Mitchell, supra.

It is, of course, difficult to fix a definite standard for determining what activities of an employee, performed before and after his hours of work, are an integral part of and indispensable to his principal activities. Each case must be

---

3. However, in those instances where the job lasted for an extended time, requiring continuous shifts of employees, working around the clock, the defendant did not compensate for the time spent in traveling from the yards to the well site.

decided upon its peculiar facts.[4] It is true, as contended by the defendant, that driving a truck is a totally different type of activity from that performed by such driver-employee at the well site. But employees who transport equipment without which well servicing could not be done, are performing an activity which is so closely related to the work which they and the other employees perform, that it must be considered an integral and indispensable part of their principal activities. As to the drivers of the pickup trucks, it is quite clear from the record that they are also transporting equipment without which the principal activities could not be performed. While this equipment could be transported by other means, so long as the pickups are used for that purpose, the drivers must be considered as performing services essential to the principal activity. Under the circumstances of this case, if the trucks are used solely for the transportation of employees to and from their principal place of work, then, we think, the drivers

are "riding, or traveling" within the exclusion of Section 4 of the Act. The employer is under no obligation to furnish such transportation and it is provided only for the convenience of the employees. No employee is designated to drive the pickup. Each employee, including the driver, is free to take advantage of the convenience or to provide his own transportation.

We hold that the driving of the trucks on which the units are mounted, and the driving of the pickups when used to transport necessary equipment, constitute activities which are an "integral and indispensable" part of the principal activities of the employees doing the driving, and such services are therefore compensable. This appears to be in accord with the administrative interpretation of Section 4 of the Portal-to-Portal Act published November 18, 1957 (12 F.R. 7659; 20 Code Fed.Reg. 790.7(d).[5]

Affirmed.

---

4. In Mitchell v. Greinetz, 10 Cir., 235 F.2d 621, 623, 61 A.L.R.2d 956, a case involving the compensability for time during which employees were required to take a rest break, the court said: "While in the main the factors which must be considered are well known, the difficulty as always comes when we undertake to apply them to a given state of facts, and because facts differ decided cases are not controlling and are helpful only as they point the way."

5. The pertinent portion of this regulation provides: "An employee who walks, rides or otherwise travels while performing active duties is not engaged in the activities described in section 4(a). An illustration of such travel would be the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area. In such a situation, the

walking, riding, or traveling is not segregable from the simultaneous performance of his assigned work (the carrying of the equipment, etc.) and it does not constitute travel 'to and from the actual place of performance' of the principal activities he is employed to perform."

The regulation was in effect when Congress, in enacting the 1949 amendments to the Fair Labor Standards Act of 1938, provided in Section 16(e):

"* * * any order, regulation, or interpretation of the Administrator of the Wage and Hour Division or of the Secretary of Labor * * * in effect under the provisions of the Fair Labor Standards Act of 1938, as amended, on the effective date of this Act, shall remain in effect * * *." 63 Stat. 920 (1949), 29 U.S.C.A. § 208 note.

See Steiner v. Mitchell, supra; Mitchell v. Greinetz, supra.