Fred CRENSHAW, Plaintiff-Appellee,

v.

QUARLES DRILLING CORPORATION, Defendant-Appellant.

No. 85–1630.

United States Court of Appeals, Tenth Circuit.

Aug. 20, 1986.

J. Ronald Petrikin of Gable & Gotwals, Tulsa, Okl., for defendant-appellant.

Rob L. Pyron, Wrigley & Pyron, Seminole, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Fred Crenshaw brought this action against his former employer, the Quarles Drilling Corporation (Quarles), alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. Quarles is an oil and gas contractor with mobile drilling units at sites throughout the western United States. Crenshaw was hired by Quarles as a drilling equipment mechanic on September 16, 1980. Crenshaw and Quarles agreed that Crenshaw would be responsible for routine maintenance and emergency repairs of Quarles' drilling equipment located at various sites. Crenshaw was provided with a company truck equipped with a tool carrier and a mobile telephone to travel to these sites. The parties agreed that Crenshaw would be paid a biweekly gross salary of $1,707.69, a figure which was subsequently raised to $1,793.08 on April 10, 1981. In 1983, Crenshaw filed this suit for overtime compensation, liquidated damages, attorneys' fees, and costs for the period from September 16, 1980 to June 30, 1981, and from October 1, 1981 to April 30, 1983.

The district court awarded Crenshaw $34,082.85 in overtime compensation and an equal amount in liquidated damages. Quarles appeals the determination that a *Belo* contract was in effect between the parties, the selection of the three-year stat-

ute of limitations, the award of liquidated damages, and the district court's calculation of the number of hours worked by Crenshaw. For the reasons set forth below, we affirm in part and reverse in part and remand for further proceedings consistent with this opinion.

## I.

The FLSA provides:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). This general rule does not apply when the elements of § 207(f) of the FLSA, governing so-called *Belo* contracts, are present.[1] At trial, Quarles argued that a *Belo* contract was in effect. R. Vol. I, pp. 36–37. The district court held that there was a *Belo* contract and the § 207(f) exception applied. R. Vol. I, p. 67. On appeal, Quarles now argues that there was no *Belo* contract.

▮ At the outset, we acknowledge the general rule against allowing a party to argue a legal position on appeal contrary to that argued at trial. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and*

*Procedure* § 4477 (1981). This is an equitable prohibition, *Richardson v. Turner*, 716 F.2d 1059, 1061 n. 2 (4th Cir.1983), that we will not apply when "exceptional cases or particular circumstances" demand that we consider a question of law raised on appeal. *Cf. Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 722, 85 L.Ed. 1037 (1941). In the present case, we are presented with the unusual situation where *both* parties argued at trial that a *Belo* contract existed. The applicability of the *Belo* contract exception was a crucial issue at trial that was argued extensively by both parties. Therefore, this is not an instance where the issue was not raised below. Crenshaw is not now prejudiced by being asked to address a question that was not considered at trial. Crenshaw argued at trial that a *Belo* contract had been established, and he makes the same argument on appeal. Under these particular circumstances, we do not find it equitable to apply the rule against inconsistent positions.

The elements of the § 207(f) exception were described in *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir.1982):

First, the duties of the employee must "necessitate irregular hours of work." 29 U.S.C. § 207(f). Second, the employee must be employed pursuant to a bona fide individual contract or collective bargaining agreement. *Id.* Third, that contract must "specif[y] a regular rate of pay" for hours up to forty and one and one-half times that rate for hours over forty. *Id.* at § 207(f)(1). Finally, the contract must provide a weekly pay guarantee for not more than sixty hours,

---

1. The Supreme Court approved an employment agreement establishing a fixed weekly salary for irregular weekly hours in *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). Congress subsequently codified the principles of *Belo* in what is now 29 U.S.C. § 207(f):

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under subsection (a) of this section if such employee is employed pursuant to a bona fide individual contract, or pursuant to

an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in subsection (a) or (b) of section 206 of this title (whichever may be applicable) and compensation at not less than one and one-half times such rate for all hours worked in excess of such maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

based on the specified rates. *Id.* at § 207(f)(2).

An employment agreement comes within the § 207(f) exception only if *each* of the elements is present in a particular case. *Brown*, 666 F.2d at 153. Two of the elements are in dispute here.

### A.

A *Belo* contract must specify a "regular rate of pay." 29 U.S.C. § 207(f). The Supreme Court has interpreted "regular rate" of pay to mean "the hourly rate actually paid for the normal, non-overtime work-week." *Walling v. Helmerich and Payne, Inc.*, 323 U.S. 37, 40, 65 S.Ct. 11, 40, 89 L.Ed. 29 (1944). We applied this definition in *Triple "AAA" Company, Inc. v. Wirtz*, 378 F.2d 884 (10th Cir.), *cert. denied*, 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967). In *Triple "AAA"*, an employer argued that the semi-monthly salary paid to its employees had provided compensation at a specified hourly rate that included overtime compensation for hours in excess of forty hours per week. We rejected this argument as "nothing more than after-the-fact computations," concluding that "an underlying agreement ... relating to the regular rate is crucial when an employer pays a flat monthly salary for an average work week of more than forty hours." *Id.* at 886-87. *Accord Brennan v. Elmer's Disposal Service, Inc.*, 510 F.2d 84, 87 (9th Cir.1975); *Nunn's Battery & Electric Co. v. Goldberg*, 298 F.2d 516, 519 (5th Cir. 1962).

At trial, Crenshaw insisted that he did not know the number of hours upon which

his salary was based. R. Vol. II, pp. 58-59. The chief mechanic, however, who had hired Crenshaw to work for Quarles testified that he had told Crenshaw that his salary would be based on a sixty-hour work week. R. Vol. II, pp. 98-99. The district court resolved this factual dispute by adopting Quarles' assertion that the parties had agreed to a sixty-hour work week based on forty hours at a regular hourly rate and twenty hours at one and one-half times the regular rate. R. Def. Ex. 2, p. 5. We find support for this determination in the record and do not find it to be clearly erroneous.

### B.

■ The employment agreement here comes within the § 207(f) exception only if there are "irregular hours of work." Crenshaw's work hours fluctuated substantially during the period under consideration.[2] Fluctuating hours, however, are not necessarily "irregular hours."

> "[T]he term, 'irregular hours of work,' does not mean merely a fluctuating long workweek, consisting only or mostly of variations in the hours required *over* forty. For hours to be considered irregular within the meaning of section [20]7(f), they must, in a *significant* number of weeks, fluctuate *both* below forty hours per week as well as above."

*Brown*, 666 F.2d at 154 (emphasis added). *Accord Donovan v. Tierra Vista, Inc.*, 796 F.2d 1259 (10th Cir.1986); *Donovan v. McKissick Products Co.*, 719 F.2d 350 (10th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 363.[3] Before

---

**2.** For example, on one occasion Crenshaw worked 61 hours in one week and 119 hours in the following week. R. Vol. III, Pl. Ex. 57, p. 3.

**3.** The requirement of finding that less than forty hours were worked in a "significant" number of weeks is essential to the purpose of the FLSA. Overtime pay is designed (1) to encourage employers to hire additional workers rather than demand longer hours from present employees and (2) to compensate employees for working longer hours if they choose to do so. *McKissick Products Co.*, 719 F.2d at 352. The § 207(f) exception protects employees whose jobs involve a fluctuating number of hours from week

to week. The regular rate of pay for irregular hours provides a stable income to an employee even when there was little work to be performed in a particular week. *Brown*, 666 F.2d at 154. But when the fluctuation in hours only occurs in the overtime range—more than forty hours in a week—application of the § 207(f) exception serves only to excuse the employer from paying overtime compensation. *Foremost Dairies, Inc. v. Wirtz*, 381 F.2d 653, 660–61 (5th Cir.1967), *cert. denied*, 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134 (1968). As the administrative interpretation of § 207(f) states: "Nothing in the legislative history of section 7(f) sug-

the § 207(f) exception applies, we must conclude as a matter of law that there were a "significant" number of weeks during which Crenshaw worked fewer than forty hours. *Cf. Brown*, 666 F.2d at 154.

■ The district court did not consider the number of weeks in which Crenshaw worked fewer than forty hours. The parties stipulated before trial that their employment agreement anticipated that the number of hours Crenshaw would work "would by necessity fluctuate from week to week." R. Vol. I, p. 19. The district court apparently believed that this satisfied the "irregular hours" requirement of § 207(f). Although both parties argued at trial that a *Belo* contract was in effect, neither party sought to prove the "irregular hours" element necessary to find a *Belo* contract under § 207(f). The district court erred in holding that § 207(f) applied without considering whether Crenshaw had in fact worked "irregular hours" during the course of his employment by Quarles.

■ The number of hours that Crenshaw worked each week is included in the record because that information was needed to calculate the amount of overtime compensation due. The record, therefore, allows us to resolve this legal question of whether Crenshaw worked "irregular hours" within the meaning of § 207(f). We have determined that there were only eight weeks in which Crenshaw worked fewer than forty hours out of a total of 119 weeks of work,

or 6.7% of the total.[4] This is similar to the 6.9% figure found not to be "significant" in *Brown.* 666 F.2d at 154. We hold that the number of weeks that Crenshaw worked fewer than forty hours is not sufficient to satisfy the requirement of "irregular hours" in the § 207(f) exception and thus this employment agreement is not a *Belo* contract. Quarles is therefore liable under § 207(a) for overtime compensation due to Crenshaw. We remand to the district court for a determination of the amount of overtime compensation owed to Crenshaw pursuant to the method described in *Triple "AAA"*, 378 F.2d at 887.[5]

## II.

We are also presented with several challenges to the decision of the district court regarding the number of hours for which compensation is due.

## A.

■ A two-year statute of limitations is generally applicable to actions to recover unpaid overtime compensation under the FLSA. 29 U.S.C. § 255(a). A three-year statute of limitations applies when a "willful violation" of the Act has occurred. *Id.* We have held that "a violation is willful if the employer knew or should have known of an appreciable possibility that the employees involved were covered by the Act." *Donovan v. M & M Wrecker Service, Inc.,*

gests any intent to suspend the normal application of the general overtime provisions of section 7(a) in situations where the weekly hours of an employee fluctuate only when overtime work in excess of the prescribed maximum weekly hours is performed." 29 C.F.R. ¶ 778.-406.

4. The district court accepted Plaintiff's Exhibit 57 as an accurate representation of the number of hours worked by Crenshaw during those periods for which no records were kept. R. Vol. I, p. 64. This exhibit also summarizes the time sheets kept by Crenshaw during all other periods. It is from these records that we have determined the total number of weeks worked and the number of weeks when Crenshaw worked fewer than forty hours per week. Weeks during which vacation time was taken are not included in either total, for they are not

relevant in ascertaining "irregular hours of work." *Brown,* 666 F.2d at 154.

5. We add to the discussion in *Triple "AAA"* only because Quarles has misconstrued the formula. Brief of Appellant at 9. The hourly "regular rate" of compensation is determined by dividing the weekly salary by the number of hours of work that the salary was *intended* to compensate, not the average number of hours Crenshaw actually worked. Quarles has paid Crenshaw the "regular rate" for those hours the salary was intended to compensate. Quarles now owes Crenshaw compensation in the amount of one-half the hourly rate for those overtime hours the salary was intended to compensate and one and one-half the hourly rate for those hours worked beyond what the salary was intended to compensate.

733 F.2d 83, 85 (10th Cir.1984). *See also McKissick Products Co.,* 719 F.2d at 354 (citations omitted) (a violation is willful if "the employer knew that the Act was 'in the picture' and was aware of the Act's possible application to his employees").[6]

█ The district court concluded that Quarles should have been aware of the appreciable possibility that the overtime provisions of the FLSA applied to Quarles' employees. The record supports this finding. William Morton, the tax manager for Quarles, testified that he believed Crenshaw should have been paid overtime compensation for any hours worked above sixty hours in a particular week. Def. Ex. 2, p. 17; *see* R. Vol. I, p. 64. Crenshaw was required to provide time records for Quarles throughout much of the period in question. R. Vol. I, p. 64. These time records showed that Crenshaw frequently worked more than sixty hours in a week. R. Vol. III, Pl. Ex. 57. Therefore, Quarles should have known that it owed overtime compensation to Crenshaw. Failure to pay such compensation was a willful violation of the statute, so the district court correctly applied the three-year statute of limitations under 29 U.S.C. § 255(a).

### B.

█ The time that Crenshaw spent traveling to his job sites was included by the district court in calculating the time for which overtime compensation is due. The Portal-to-Portal Act (codified at 29 U.S.C. §§ 216[b], 251–262) excludes from overtime compensation time spent "traveling to and from the actual place of performance of the principal activity" of an employee and time

spent in "activities which are preliminary or postliminary" to the principal activity. 29 U.S.C. § 254(a). This section has been interpreted not to prohibit overtime compensation when active duties are performed during travel time. *D A & S Oil Well Servicing, Inc. v. Mitchell,* 262 F.2d 552 (10th Cir.1958); 29 C.F.R. § 790.7(d). In *D A & S,* we held that employees who transported equipment needed to service producing oil wells must be compensated for their travel time. We emphasized that each case involving compensation for travel time "must be decided upon its peculiar facts." *D A & S Oil Well Servicing, Inc.,* 262 F.2d at 554–55. We added, however, that "employees who transport equipment without which well servicing could not be done, are performing an activity which is so closely related to the work which they and the other employees perform, that it must be considered an integral and indispensable part of their principal activities." *Id.* at 555. *See Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956) (adopting the "integral and indispensable" standard).

The district court here found that travel was an indispensable part of Crenshaw's job. We agree. Quarles provided Crenshaw with a specially equipped truck containing many of the tools that he needed to service drilling rigs scattered across several states. We hold that the district court did not abuse its discretion in finding that time spent travelling to and from drill sites in this truck was compensable under the FLSA.

### C.

█ The district court included meal periods in calculating the time for which

6. We are aware that the Supreme Court disapproved this standard for willfulness in the context of the liquidated damages provision of the Age Discrimination in Employment Act in *Trans World Airlines v. Thurston,* 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985). The Court in *Thurston* believed that such a "broad" standard was inappropriate because it "would result in an award of double damages in almost every case." *Id.* But the Court carefully left open the question of the appropriate standard for the statute of limitations. *Id.*

A statute of limitations does not operate as a penalty against a defendant, unlike an award of liquidated damages. The First Circuit relied on this distinction in holding that *Thurston* does not effect the willfulness standard for the statute of limitations. *EEOC v. McCarthy,* 768 F.2d 1 (1st Cir.1985); *Secretary of Labor v. Daylight Dairy Products, Inc.,* 779 F.2d 784 (1st Cir.1985). We agree with the First Circuit, and we continue to hold that the willfulness standard stated in *M & M Wrecker,* 733 F.2d at 85 determines which statute of limitations applies under the FLSA.

overtime compensation is due. The Portal-to-Portal Act does not affect meal periods during the work day because it only applies to activities which take place either before or after a complete work day. 29 U.S.C. § 254. The administrative interpretation of the Act correctly recognizes that 29 U.S.C. § 254 "plays no part in determining whether ... a [meal] period ... is or is not compensable." 29 C.F.R. § 790.6(b). The evidence suggests that Crenshaw often ate hurriedly due to the nature of his work. *See e.g.,* R. Vol. II, p. 46. Under the circumstances in this case, we find that meal periods were properly included in the determination of hours worked.

### D.

The district court's findings of fact indicate that Crenshaw worked between 40 and 48 hours per week from the last week of September, 1980 until approximately December 1, 1980. R. Vol. I, pp. 64–65. The district court's conclusions of law, however, state that Crenshaw worked 72 hours per week between September 16, 1980 and January 9, 1981. R. Vol. I, p. 69. The two determinations are irreconcilable. We remand for a decision regarding the number of hours Crenshaw worked between the last week of September, 1980 and December 1, 1980.

### III.

■■■ The FLSA provides for an award of liquidated damages in an amount equal to unpaid overtime compensation. 29 U.S.C. § 216(b). The only instance where a court may exercise discretion in not awarding liquidated damages is when an employer shows that its action was in good faith and that it had reasonable grounds for believing the failure to pay overtime com-

pensation was not a violation of the FLSA. 29 U.S.C. § 260.[7] The district court concluded that Quarles had not met its burden of demonstrating good faith. *See Sinclair v. Automobile Club of Oklahoma, Inc.,* 733 F.2d 726, 730 (10th Cir.1984). Quarles apparently believed that it was not in violation of the FLSA because it thought that its employment agreements came within the § 207(f) exception to the overtime requirements. But a misunderstanding of the requirements of the Act is not a reasonable ground under § 260. *See Sinclair,* 733 F.2d at 730. We hold that the district court did not abuse its discretion in awarding liquidated damages. We remand, however, for a recalculation of the amount of liquidated damages in light of the recalculation of the amount of overtime compensation due.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

---

7. 29 U.S.C. § 260 provides:
   In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S. C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.