William C. RENFRO; Alan R. Metchley;
William L. Olson; Timothy L. Webb;
Alan R. Mechtley; Rick A. Clark; Gary
W. Brammer; Lyle G. Armitage, IV;
Larry D. Bess; Kelly K. Riggs; Bobby
W. Fancher; Steven F. Kuhlman;
Charles A. Smith; Jesse C. Shaver; Gil-
bert Herrera; Keith L. Peres; David V.
Kelly; Terence L. Kramer; William C.
Renfro; James L. Wells; William L.
Olson; Thomas A. Andrews; Jeffrey D.
Hutcherson; E. Gene Bryant; Jerry
Schrock; Cleo C. Strassey, Jr.; Max-
well A. Sielert; Richard L. Brickell;
Larry D. Howard; Donald D. Cook, Jr.;
David E. Cox; Richard M. Schlup, Jr.;
Robert Binder; James A. Schuhardt;
Thomas L. Alexander; James L. Comp-
ton, Plaintiffs–Appellees,

v.

CITY OF EMPORIA, KANSAS,
Defendant–Appellant,

The League of Kansas Municipalities,
Amicus Curiae.

No. 90–3249.

United States Court of Appeals,
Tenth Circuit.

Nov. 13, 1991.

Thomas A. Woodley (Gregory K. McGillivary, with him on the brief) of Mulholland & Hickey, Washington, D.C., for plaintiffs-appellees.

Stanley E. Craven (Dale W. Bell of Helbert, Bell & Smith, Emporia, Kan., with him on the briefs) of Spencer Fane Britt & Browne, Kansas City, Mo., for defendant-appellant.

James M. Kaup and David L. Corliss, Topeka, Kan., on the brief for amicus curiae.

Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.

BARRETT, Senior Circuit Judge.

The City of Emporia, Kansas (hereinafter "City") appeals from the orders of the district court granting summary judgment in favor of thirty-three plaintiffs, all of whom are or were firefighters employed by City (hereinafter "firefighters"), denying City's motion for summary judgment, and assessing damages. *Renfro v. City of Emporia, Kan.,* 729 F.Supp. 747 (D.Kan.1990). (*See also Renfro v. City of Emporia, Kan.,* 732 F.Supp. 1116 (D.Kan.1990); *Renfro v. City of Emporia, Kan.,* 741 F.Supp. 887 (D.Kan.1990); *Renfro v. City of Emporia, Kan.,* 1990 WL 95087 (D.Kan.1990)).

The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA") requires that employers pay their employees overtime for additional hours worked over forty hours per week. Section 207 addresses the maximum work hours allowed under FLSA, and § 207(k) specifically applies to law enforcement and fire protection agencies.

### Background

In April, 1986, City became subject to the requirements of FLSA when Congress adopted the FLSA Amendments of 1985, P.L. 99–150. Upon their enactment, City created a task force to assess the impact the requirements would have on the fire department. (R., Vol. I, Tab 29 at p. 2). Firefighters were allowed to discuss with the task force the issue of compensation for on-call time. (R., Vol. I, Tab 29 at p. 9).

Firefighters employed with City were regularly scheduled to work six shifts of twenty-four hours each in a 19–day cycle, for a total of 144 hours. Each firefighter also appeared on a mandatory callback list for each 24–hour period following a regularly scheduled tour of duty. During this on-call period, the firefighters were not required to remain on the stationhouse premises. However, they were required to carry pagers and return to work within twenty minutes if called or be subject to discipline. Firefighters who were late or missed a callback received a "white slip".[1] (R., Vol. I, Tab 29 at pp. 7–8). Firefighters were paid overtime for on-call time only when actually called back to work. Firefighters called back to work were paid a minimum of an hour of overtime. (R., Vol. I, Tab 29 at p. 6).

City has two fire stations and each station maintains a separate on-call list. Five firefighters were normally on the list at one station and three at the other. The callbacks were made in the order the firefighters appeared on the list, and the order

was rotated for each 24–hour on-call period.[2] Firefighters were called in when the on duty staff at the stations fell below the required minimum. (R., Vol. I, Tab 29 at p. 5).

In January, 1987, firefighters filed this action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and for compensation and other relief under FLSA. (R., Vol. I, Tab 1). In their Complaint, firefighters alleged that: the on-call policy was so restrictive they were unable to effectively use the time for personal activities; the on-call duty was time spent working for City in excess of the hourly levels set forth in FLSA and therefore compensable under FLSA; and, City's "actions and omissions were done in a knowing, willful, purposeful, intentional and bad faith manner." (R., Vol. I, Tab 1 at p. 3).

City answered, denying firefighters' allegations of bad faith and contending it had acted in good faith when implementing the on-call policy in that firefighters had been paid any overtime to which they were entitled. (R., Vol. I, Tab 6 at pp. 4–5). City stated the on-call policy was designed to be "non-restrictive so as to allow the firefighters to effectively engage in their own personal pursuits." (R., Vol. I, Tab 6 at p. 3).

Both parties filed motions for summary judgment. In its motion, City included statements of uncontroverted facts specifically "for the purpose of their motion." (R., Vol. I, Tab 29 at p. 3). These statements included, among others, that the number of callbacks firefighters received ranged from zero to thirteen per day, but averaged approximately four to five per day. (R., Vol. I, Tab 29 at p. 6). City also acknowledged that: firefighters uniformly estimated the callbacks to average three to five per day; the average duration of a callback was one hour; and, the issuance of "white slips" was a disciplinary method. City stated, however, that the slips were received for various reasons and not simply

---

1. A white slip is a form of discipline which is considered in employee evaluations and which may result in disciplinary action, including possible termination, if four or more white slips are received in a four-month period.

2. For example, a firefighter who is second on the list one on-call time period will move to first on the list the next time period while the firefighter who is first will rotate to last on the list.

for missing or being late to a call. (R., Vol. I, Tab 29 at p. 7).

City contended that at the time of this lawsuit: eleven of the firefighters had secondary employment; firefighters were not required to remain on the stationhouse premises during their on-call duty but were to report within twenty minutes from the time they were called back; firefighters had traded their on-call duties with other firefighters; and that while on on-call duty, firefighters had "participated in sports activities, socialized with friends and relatives, attended business meetings, gone shopping, gone out to eat, babysitted, and performed maintenance or other activities around their home". (R., Vol. I, Tab 29 at pp. 11–12).

City further asserted that Carol King, an administrative assistant for the City, "contacted the Department of Labor, described the City['s] procedures regarding the on-call policy, and received an oral opinion that the City's procedures were not in violation of the ... Act." (R., Vol. I, Tab 29 at p. 10).

In their motion for partial summary judgment, firefighters set forth a "statement of material facts to which there existed no genuine issue," (R., Vol. I, Tab 33 at p. 2), including statements that firefighters were required to return to the stationhouse within twenty minutes after receiving a callback; white slips were a form of discipline used when a firefighter missed or was late to a call; and firefighters were paid overtime only when they were actually called back to duty and not for the time spent on-call. (R., Vol. I, Tab 33 at pp. 5–7). Firefighters further stated that on occasion a firefighter must answer 12–13 calls in one day; and that on the average, on-call firefighters receive 3–5 calls per day. (R., Vol. I, Tab 33 at p. 10).

Firefighters argued in their motion that the on-call policy greatly restricted their personal activities: that due to the twenty minute time constraint and the large number of callbacks, they could not go out of town; they could not do simple things such as change their oil or work on their cars; they could not go to a movie or go out to

dinner for fear of being called back; they could not be alone with their children unless they had a babysitter "on-call;" they could not drive anywhere with anyone when on-call (i.e., they must take separate cars in case of a callback); and, they were reluctant to participate in group activities for fear of being called away. (R., Vol. I, Tab 33 at pp. 9–10).

Firefighters further contended the disciplinary "white slips" were logged by the fire chief and that a firefighter who received four or more within a four-month period could be terminated. (R., Vol. I, Tab 33 at pp. 5–7). Firefighters asserted that trading the mandatory on-call shifts was very difficult because there was no economic incentive to trade and the on-call duty was so restrictive that the other firefighters would rather not trade.

### District Court's Order

In denying City's motion for summary judgment and granting firefighters' motion for partial summary judgment, the district court found that the relevant facts were largely undisputed and concluded that the on-call time was compensable time under FLSA. *Renfro*, 729 F.Supp. at 748. The district court found that while firefighters were not required to remain on the stationhouse premises, the conditions of the on-call duty were such that firefighters' personal pursuits were restricted. *Id.* at 751. The court set forth the conditions it believed restricted the firefighters, including: "the firefighter must be able to hear the pager at all times; that the firefighter must be able to report to the stationhouse within twenty minutes of being paged or be subject to discipline; that the on-call periods [were] 24–hours in length; and primarily, that the calls [were] frequent—a firefighter may receive as many as 13 calls during an on-call period, with a stated average frequency of 3–5 calls per on-call period". *Id.*

The district court determined that, based on these conditions, the firefighters were "engaged to wait," and therefore entitled to compensation under FLSA, *Id.* at 752, and that the frequency with which fire-

fighters were subject to callbacks distinguished this case from other cases which have held on-call time as noncompensable. *Id.*

In assessing actual damages, the district court found sleep and meal times were compensable under 29 C.F.R. §§ 553.222–23 (1990) since the on-call shifts were 24-hours in length. The district court also determined the proper calculation of actual damages was the number of hours each firefighter was subject to on-call duty, multiplied by 1.5 times each firefighters' hourly rate of pay at that time. The amount of overtime pay actually received by each firefighter was to be subtracted from that figure. *Renfro,* 1990 WL 95087 at 3.

The district court determined it was required to award liquidated damages together with the actual damages under 29 U.S.C. § 216(b), unless City demonstrated its actions were in good faith and City had reasonable grounds for believing its on-call policy was not in violation of FLSA. *Id.* The court found that City had not met its burden, and found that City's alleged attempt to consult the Department of Labor regarding the legality of its on-call policy was insufficient. *Id.* at 4.

### Appellate Contentions

On appeal, City contends that the district court erred: (1) in granting summary judgment on the issue of liability in favor of the firefighters by finding there were no triable issues of material fact and by misapplying the law to the facts; (2) in failing to grant City's motion for summary judgment; (3) in its method of calculation of damages by (a) awarding overtime pay for mealtime, sleeping time, time spent working for other employers and other personal time, (b) by not granting the City a hearing on the issue of the amount of damages, and (c) by awarding liquidated damages; and (4) by not finding the application of the FLSA to municipalities to be unconstitutional.

### Discussion—Conclusion

We hold the district court did not err in granting summary judgment in favor of firefighters or in its assessment of damages. Therefore, we affirm.

### I.

City contends the district court erred by entering summary judgment against them on the issue of City's liability for overtime pay.

We review summary judgment orders de novo, applying the same standard used by the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). Under Fed.R.Civ.P. 56(c), a motion for summary judgment may be granted if it is shown there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We have held that "[s]ummary judgment may be granted only where there is no doubt from the evidence, with all inferences drawn in favor of the nonmoving party, that no genuine issue of material fact remains for trial and that the moving party is entitled to judgment as a matter of law." *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984). On appeal, we examine the facts in the light most favorable to the party opposing summary judgment. *Anderson v. Department of Health & Human Services,* 907 F.2d 936, 947 (10th Cir.1990). If we determine there is no genuine issue of material fact, we then determine whether the substantive law was correctly applied to the facts. *Osgood,* 848 F.2d at 143.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

City contends on appeal the district court erred in finding firefighters were called back to work from on-call status on average 3–5 times per on-call period; it was difficult, if not impossible for firefighters to work in other employment while on-call; and that firefighters could not effectively use their on-call time for personal pursuits. City further contends the district court erred in failing to consider that firefighters were permitted to trade, and did trade, on-call shifts; and in failing to draw all inferences from the underlying facts in favor of City. City also alleges the district court erred by making factual findings while ruling on firefighters' motion for summary judgment.

### a.

■ City states there was and always has been an issue of material fact regarding the number of callbacks. (Appellant's Brief, pp. 5, 7). However, in its motion for summary judgment, City set forth the following as "statements of uncontroverted facts,"

21. Call-ins range from zero to thirteen (13) per day, but average approximately four (4) or five (5) per day (Turner Depo., p. 22; Lang depo., p. 26).

22. Plaintiffs uniformly estimate call-ins average three (3) to five (5) per day (Def.'s Interr. to Pl.'s No. 16).

(R., Vol. I, Tab 29, p. 6).

On appeal, City argues that these statements were set forth for purposes of its motion for summary judgment only. City contends the concession "arguendo" in its motion does not establish that they have stipulated to the facts for purposes of firefighter's motion for summary judgment. (Appellant's Reply Brief, p. 1). City argues, citing *Nafco Oil and Gas, Inc., v. Appleman,* 380 F.2d 323 (10th Cir., 1967), that "the filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact". This Court has held, however, that "cross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties". *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 692 (10th Cir., 1981).

City further contends it disputed the average callback figure of 3–5 per day in its response to firefighters' motion for summary judgment. (Appellant's Brief at p. 7). The contentions set forth in the response, and relied upon by City, do not dispute the specific statement made in City's motion for summary judgment that the average callback figure for a 24–hour period was 3–5 callbacks. City merely stated 12–13 callbacks in one 24–hour period was extremely rare. City also briefly mentioned that the average time a firefighter spent on call during a 24–hour period was 1.15 hours.[3] (R., Vol. II, Tab 35, p. 9). The record indicates City did not specifically dispute the average number of callbacks cited by firefighters. We hold the district court did not err in its determination that the 3–5 callbacks per 24–hour period was an undisputed fact.

### b.

■ City argues the district court erred by finding it was difficult, if not impossible, for firefighters to work in other employment while on-call.

Firefighters contended in their memorandum in opposition to City's motion for summary judgment that maintaining secondary employment while on-call was difficult or impossible. (R., Vol. I, Tab 34 at pp. 3–4). City's only statement regarding this issue was that City was waiting for the further documentation concerning secondary employment it had requested from firefighters. (R., Vol. II, Tab 36 at p. 3).

While City stated that eleven of the firefighters had secondary employment, it did not address the specific issue firefighters

---

**3.** City did not provide evidence showing whether the 1.15 hour figure constituted one callback or five callbacks.

set forth in their argument, i.e., the difficulty firefighters experienced in obtaining or maintaining secondary employment. The record is void of any rebuttal from City regarding the secondary employment issue. The mere statement by City that some of the firefighters have secondary employment does not refute the contention that obtaining and maintaining secondary employment is difficult. Absent any specific rebuttal from City, we hold the district court did not err in determining it was difficult, if not impossible, for firefighters to obtain secondary employment.

c.

City contends the district court erred by finding firefighters could not effectively use their time on-call for personal pursuits.

The Department of Labor (DOL) promulgated regulations applicable to on-call time for public employees to determine whether such hours were compensable under FLSA. These regulations state in part,

§ 785.17 On-call Time:

An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'. An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call.

29 C.F.R. § 785.17

§ 553.221 Compensable Hours of Work:

(c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for personal pursuits also constitutes compensable hours of work.

(d) An employee who is not required to remain on the employer's premises but is merely required to leave word ... where he or she may be reached is not working while on call. Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits.

29 C.F.R. § 553.221

■ The district court found the on-call time was compensable under the above regulations based upon specific undisputed facts set forth by both parties. The undisputed facts included "the firefighter must be able to report to the stationhouse within twenty minutes of being paged or be subject to discipline; that the on-call periods are 24–hours in length; and primarily that the calls are frequent—a firefighter may receive as many as 13 calls during an on-call period, with a stated average frequency of 3–5 calls per on-call period." *Renfro*, 729 F.Supp. at 751. Based on the undisputed facts and the applicable law, we hold the district court did not err in determining the on-call time was compensable under FLSA.

d.

City contends the district court erred in denying its motion for summary judgment by failing to take into account that firefighters were permitted to trade, and did trade, on-call shifts.

■ Firefighters set forth a specific issue regarding the difficulty experienced with trading on-call shifts, (R., Vol. I, Tab 33 at p. 11; see also, R., Vol. I, Tab 34 at p. 2), to which City responded that it was the personal decision of a firefighter whether or not to trade shifts. City also stated firefighters had in fact traded shifts. (R., Vol. II, Tab 35 at pp. 9–10). City did not address the specific issue of the difficulty the firefighters encountered in trading their on-call shifts. The statement that the firefighters were able to trade their shifts did not rebut the contention by firefighters that it was difficult to trade on-call shifts. We hold that without specific rebuttal of the contentions set forth by firefighters, the district court did not err in finding the trading of on-call shifts was difficult if not impossible.

e.

City contends the district court erred by making factual findings while ruling on firefighters' motion for summary judg-

ment. City's assertion of the district court's "factual findings" include: the conditions of on-call status restricted firefighters' personal pursuits even though they were not required to remain on stationhouse premises; the callbacks were frequent with a stated average of 3–5 callbacks per on-call period; firefighters were subject to discipline for late or missed calls; secondary employment was difficult due to the restrictive nature of the on-call status; City is the primary beneficiary of the on-call program; and, firefighters presented evidence that they were effectively precluded from engaging in group activities or from activities requiring the expenditure of money because they must report within 20 minutes of being called. The record reflects that the above "factual findings" were in fact undisputed facts and conclusions made by the district court based upon the undisputed facts. We have carefully reviewed the record and hold that the district court did not make factual findings, but rather relied on undisputed facts set forth by the parties in granting summary judgment in favor of firefighters.

### f.

City argues the district court erred by failing to draw all inferences from the underlying facts in its favor. "[E]vidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "This is because when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id. quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

The record shows that City did not dispute, but instead incorporated the material facts upon which the district court relied in granting summary judgment in favor of firefighters. The facts cited by City in its brief were all facts that the district court correctly determined to be undisputed. (Appellant's Brief at pp. 18–19). The inferences drawn from these undisputed facts clearly indicate there were no material issues of fact warranting trial.

We therefore hold that the district court did not err in its findings of undisputed facts.

### II.

City contends the district court erred by misapplying the applicable law to the facts under consideration.

While FLSA does not provide a definition for "work," the courts have interpreted the meaning of the word to be "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). *See also Armour & Co. v. Wantock*, 323 U.S. 126, 132, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944). The courts have further developed this definition into a method for testing whether on-call time is compensable under FLSA.

The United States Supreme Court has stated "an employer ... may hire a man to do nothing, or to do nothing but wait for something to happen.... Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer." *Armour* at 133, 65 S.Ct. at 168. The Court further observed that whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent on the circumstances of the case. *Id.*

In *Skidmore v. Swift & Co.*, the Supreme Court held:

> that no principle of law found either in the statute or in Court decisions precludes waiting time from also being working time. We have not attempted to, and we cannot, lay down a legal formula to resolve cases so varied in their

facts. Whether ... such time falls within or without the Act is a question of fact to be resolved by appropriate finding of the trial court.

323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944).

■ To aid in the determination of whether on-call time is compensable, the DOL promulgated the regulations set forth, *supra*, which indicate on-call time is compensable if the employee is required to remain on the employer's premises, 29 C.F.R. § 785.17, or if the employee, although not required to remain on the employer's premises, finds his time on-call away from the employer's premises is so restricted that it interferes with personal pursuits. 29 C.F.R. § 553.221(d). An agency's construction of its own regulations is entitled to substantial deference. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555–56, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980). See also, *United Transp. Union v. Dole*, 797 F.2d 823, 828–29 (10th Cir. 1986).

We have stated the test to determine whether on-call time is compensable "requires consideration of the agreement between the parties, the nature and extent of the restrictions, the relationship between the services rendered and the on-call time and all surrounding circumstances." *Boehm v. Kansas City Power & Light Company*, 868 F.2d 1182, 1185 (10th Cir. 1989). *See also Skidmore* at 137, 65 S.Ct. at 163. We have further stated that the facts and circumstances of each case should determine whether periods of waiting for work should be compensable under FLSA. *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653, 654 (10th Cir.1988). Accordingly, we stated the "resolution of the matter involve[s] determining the degree to which the employee could engage in personal activity while subject to being called." *Id.* at 655. The Supreme Court has stated the "facts may show that the employee was engaged to wait, or they

may show that he waited to be engaged." *Skidmore* at 137, 65 S.Ct. at 163.

City contends that *Norton* and *Boehm* are the controlling cases in this Circuit on the issue of compensability of on-call time. (Appellant's Brief at p. 20). The fact-bound nature of these cases is such that, in our view, they are easily distinguishable from the instant case, as determined by the district court.

In *Boehm*, power-company linemen were obligated to work overtime when storms and other emergencies occurred. The linemen were only required to be reachable and accept call-outs approximately one-third of the time they were on-call, and the company did not count more than one call-out per calendar day, no matter how many attempts were made to reach the lineman during that day.[4] *Boehm* at 1183. The plaintiffs in *Norton* were van drivers who transported railroad crews to and from their trains. The drivers generally worked shifts of eight to twelve hours a day and during that time they were required to be near enough to the employer's premises to be able to respond to calls within fifteen to twenty minutes. The drivers were, however, compensated for this waiting time if they received a call within two hours of their last call. *Id.* at 654. Neither *Boehm* nor *Norton* indicate the frequency with which their plaintiffs were called back.

Firefighters in this case were required to report to a callback within twenty minutes, and to answer each callback or be subject to discipline (they were subject to discipline also if they were late to a callback); and they were not compensated for any of the waiting time. The on-call shifts were 24 hours in length and the average number of callbacks was 3–5 times per 24–hour period.

The district court found the frequency of callbacks to be an important distinction. *Renfro*, 729 F.Supp. at 752. This determination by the district court is supported by two recent "Letter Rulings" issued by the

---

**4.** Call-outs were not counted on days when the employee was excused from overtime work, such as days of vacation, restricted duty, jury duty, or when deaths in the family had oc-

curred. Call-outs were also not counted when the employee was ill or injured, and only one call-out was counted during a weekend and adjacent holidays.

DOL. In a Letter Ruling dated March 11, 1986 (no number assigned), the DOL determined that firefighters who were on call between 5:00 a.m. and 8:00 a.m. during each scheduled workday must be compensated. The DOL determined the employer established such restrictive conditions on the firefighters that the employer effectively controlled the firefighters' time. The conditions established by the employer included, "the firefighters must be dressed and waiting for a call, they must report to the nearest fire station within ten minutes from the receipt of the call and are subject to discipline if they are late or fail to respond." (R., Vol. I, Tab 33, Exhibit H, pp. 144–45).

A second Letter Ruling from the DOL dated March 12, 1987 (no number assigned) concluded that firefighters who were required to wear electronic paging devices with a reception distance of 30 miles, and who were required to respond to at least one-half of the calls, were not eligible for compensation. The letter further stated, however, if the callbacks were "so frequent that the [firefighter] is not really free to use the off-duty time effectively for [his] own benefit, the intervening periods as well as the time spent in responding to calls would be counted as compensable hours of work." (R., Vol. I, Tab 33, Exhibit H at p. 146). See also *Renfro*, 729 F.Supp. at 752 n. 1.

The district court also found the nature of the firefighters' employment a relevant factor in determining that the on-call time was compensable. *Id.* at 753. Firefighters must be alert and ready to protect the community, and the time firefighters spend lying in wait for emergencies could be considered a benefit to the employer and thus compensable under FLSA. *Armour* at 133, 65 S.Ct. at 168.

Therefore, based upon the factual distinctions between *Norton, Boehm,* and the instant case, we hold the district court did not err in its application of the law to the facts under consideration.

### III.

In view of our determination that the district court properly distinguished *Nor-*

*ton* and *Boehm* when granting summary judgment in favor of firefighters, we hold that the district court did not err in denying City's motion for summary judgment.

### IV.

City contends the district court erred in its assessment of damages. Specifically, City contends (a) firefighters should not receive damages for periods when they were at the bottom of the call list and not likely to be called in for duty; (b) firefighters should not receive pay for meal and sleeping time while on the "on-call" list but not on a regular "tour of duty"; (c) firefighters should not receive pay for periods when they did not restrict their normal personal activities or when they worked for other employers while on-call; (d) firefighters should not be entitled to damages for occasions when they volunteered for on-call duty; and (e) the district court erred by awarding Firefighter Binder $122,131.80 in backpay and liquidated damages.

#### a.

City contends the firefighters on the bottom of the list would not be called in as frequently as a firefighter on the top of the list. While the district court acknowledged this, it found there was an undisputed average of 3–5 callbacks per 24–hours. (R., Vol. II, Tab 47 at p. 3). We agree. Accordingly, we hold that the district court correctly applied this 3–5 callback figure to all firefighters.

#### b.

City contends firefighters should not receive pay for meal and sleeping time while on the "on-call" list but not on a regular "tour of duty." The district court found the meal and sleep time compensable under federal regulations 29 C.F.R. § 553.-222–23. The regulations state in part,

§ 553.222 Sleep time.

(b) Where the employer has elected to use the section 7(k) exemption, sleep time cannot be excluded from the compensable hours of work ... (2) Where the

employee is on a tour of duty of exactly 24 hours ...

29 C.F.R. § 553.222

§ 553.223 Meal time.

(c) ... Where the public agency elects to use the section 7(k) exemption for firefighters, meal time cannot be excluded from the compensable hours of work ... (2) where the firefighter is on a tour of duty of exactly 24 hours ...

29 C.F.R. § 553.223

City argues that the firefighters were not on a "tour of duty" as required by the regulations, and therefore they are not entitled to compensation for sleep and meal times. The federal regulations define "tour of duty" as "the period of time during which an employee is considered to be on duty for purposes of determining compensable hours." 29 C.F.R. § 553.220(b). The district court found the 24–hour on-call shifts were compensable hours under FLSA. *Renfro,* 729 F.Supp. at 751. Further, the court found that since the on-call shifts were 24–hours in length, the sleep and meal times were compensable under 29 C.F.R. §§ 553.222–223. *Renfro,* 1990 WL 95087 at 3.

Having held that the district court properly found that the 24–hour on-call shifts were compensable under FLSA, we also hold that the district court properly determined that sleep and meal time were compensable.

c.

■ City further contends the firefighters should not receive pay for periods when they did not restrict their normal personal activities or when they worked for other employers while on-call. The district court found the on-call time so restrictive of the firefighters' personal time that the on-call time was compensable under FLSA. *Renfro,* 729 F.Supp. at 751. This issue was properly addressed by the district court. Thus we hold that the district court did not err in finding that all of the on-call time was compensable under FLSA.

d.

■ City argues firefighters should not be entitled to damages for occasions when they volunteered for on-call duty. The record is devoid of any specific contentions that the firefighters volunteered for on-call duty. The district court addressed, however, the issue of trading on-call shifts and found it to be undisputed that it was difficult if not impossible to trade shifts. *Id.* at 748. This is an undisputed fact. In the absence of any contentions that the firefighters volunteered for on-call duty, the district court did not err in not addressing the issue. We hold that the district court did not err in finding traded on-call shifts compensable.

e.

City contends the district court erred by awarding Firefighter Binder $122,131.80 in backpay and liquidated damages. (See *Renfro,* 741 F.Supp. 887).

Fed.R.Civ.P. 8(c) requires that affirmative defenses be pleaded or they are deemed waived. See *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976); *Radio Corporation of America v. Radio Station KYFM, Inc.,* 424 F.2d 14, 17 (10th Cir.1970). "The general purpose of [Fed.R.Civ.P.] 8(c) is to provide particularized and specific notice of certain defenses." *State Distributors, Inc. v. Glenmore Distilleries,* 738 F.2d 405 (10th Cir.1984). Therefore, the courts must be "especially careful to scrutinize the record to insure that plaintiff had sufficient notice and opportunity to rebut an allegedly tardily raised affirmative defense." *Id.*

■ City did not affirmatively plead the defense of Firefighter Binder's exemption from FLSA until it filed a motion to alter or amend. (R., Vol. II, Tab 63). Thus, the district court properly found that City's failure to affirmatively plead the defense prior to the grant of summary judgment in favor of firefighters was an effective waiver. *Renfro,* 741 F.Supp. at 888.

The district court further stated that even if City had not effectively waived its right to plead the exemption defense, it had not met its burden of proof that Firefighter

Binder was exempt from compensation under FLSA. *Id.*

Section 13(a)(1) of FLSA provides an exemption for employees employed in a bona fide executive, administrative, or professional position. 29 U.S.C. § 213(a)(1). "The employer bears the burden of showing that an employee is exempt under the Act." *Firefighters Local 2141 v. City of Alexandria, Va.,* 720 F.Supp. 1230, 1232 (E.D.Va.1989). "The employer who asserts the exemption has the burden of establishing [the] requirements by clear and affirmative evidence." *Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984). The employer must show the employee is paid on a salaried basis and the job duties are administrative, managerial, or professional under the specific guidelines outlined in 29 C.F.R. §§ 541.1–3. *Firefighters Local 2141* at 1231.

In its motion to alter or amend judgment, City did not affirmatively state any of the requirements set forth in the federal regulations. City merely stated Firefighter Binder had received a promotion and therefore was exempt from compensation under FLSA. (R., Vol. II, Tab 63). On the basis of the record, the district court correctly found that City had not met the burden established by the federal regulations. We hold, therefore, that the district court did not err in awarding compensation to Firefighter Binder.

## V.

City contends the district court erred by awarding firefighters liquidated damages.

Under 29 U.S.C. § 216(b), an employer who violates the FLSA shall be liable to the employee for overtime compensation and an additional equal amount as liquidated damages. The purpose for the award of liquidated damages is "the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 463 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), *citing Overnight*

*Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942). Under 29 U.S.C. § 260, if in any action to recover unpaid overtime compensation an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA," the court may refuse to award liquidated damages.

> All circuits that have considered the matter hold that the trial court may eliminate or reduce the award of liquidated damages only if the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the Act.

*Doty v. Elias,* 733 F.2d 720, 725 (10th Cir. 1984). See also *Crenshaw v. Quarles Drilling Corp.,* 798 F.2d 1345, 1351 (10th Cir.1986); *Sinclair v. Automobile Club of Oklahoma, Inc.,* 733 F.2d 726, 730 (10th Cir.1984); *Marshall v. Brunner,* 668 F.2d 748, 753 (3rd Cir.1982).

The good faith requirement mandates the employer have "an honest intention to ascertain and follow the dictates of the Act." *Id.* "The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." *Id.*

"The employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds ... [i]n the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages." *Id.*

City states it should not be faulted for failing to establish "reasonable grounds" when it was denied the opportunity to do so in a hearing. (Appellant's Brief at p. 35). In its statement of unresolved issues, City stated it was "unclear" whether firefighters would seek liquidated damages, but in the event firefighters did seek liquidated

damages, the record established City had acted in good faith and had reasonable grounds for believing its policy was not a violation of the FLSA. City requested a hearing in the event the district court did not determine the record established City had acted in good faith and had reasonable grounds for believing its policy was not in violation of the FLSA. (R., Vol. II, Tab 56 at p. 9).

While the district court did not specifically address the issue of whether it was clear that firefighters would seek liquidated damages, the record reflects firefighters specifically prayed for liquidated damages in their complaint. (R., Vol. I, Tab 1 at p. 4). Therefore, City's contention that it was "unclear" whether firefighters would seek liquidated damages is without merit.

It is necessary for City to meet both of the requirements in order to avoid liquidated damages. *Marshall* at 753. While the district court did not address the issue of whether City acted in good faith or not, it found City had not met the second requirement of "reasonable grounds", and thus the district court determined it was required to award liquidated damages. *Renfro*, 1990 WL 95087 at 4.

The district court indicated that the record reflected City's only attempt to determine if they were in compliance with the FLSA was a phone-call made to a "Mrs. Spivey" at the DOL by Carol King, an administrative assistant for City. *Id.* (See also, R., Vol. I, Tab 29 at p. 10, Exhibit 8). The district court found this attempt to be inadequate in that at the time of the deposition, King "could not recall Mrs. Spivey's position with the DOL or in what detail she described the on-call policy. King also did not recall telling Spivey the average number of calls received by firefighters during an on-call shift." *Id.* at 4–5. The district court found that City never requested a written opinion from the DOL. *Id.* at 5. The district court thus found that City had not met its burden of showing it had rea-

sonable grounds to believe its on-call policy was not in violation of the FLSA. *Id.*

We hold the district court properly determined City had not met its burden in showing it had reasonable grounds to believe the on-call policy was not in violation of the FLSA, and, therefore, we further hold the district court did not err in awarding liquidated damages.

## VI.

City contends the application of the FLSA to municipalities is unconstitutional.

In *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Supreme Court held the application of the FLSA to state and local governments does not violate the Tenth Amendment of the United States Constitution. In upholding the application of the FLSA to state and local governments, the Court expressly overruled *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).[5] *Renfro*, 729 F.Supp. at 750.

City argued for the adoption of the dissent in *Garcia* and the reapplication of *National League of Cities*. City further argued firefighters were distinguishable from the mass transit employees in *Garcia* in that subjecting firefighters to the requirements of the FLSA would "impair local integrity". *Renfro*, 729 F.Supp. at 750. The district court addressed City's arguments and determined the coverage of firefighters under FLSA was consistent with *Garcia*, and therefore concluded that City's argument was without merit. *Id.* We agree.

WE AFFIRM.

---

**5.** *National League of Cities* held the application of the FLSA to state and local employees engaged in "traditional governmental functions" violated the Tenth Amendment.