**Robert ACKINCLOSE, Joseph F. Barcia, et al., Plaintiffs–Appellants,**

v.

**PALM BEACH COUNTY, FLORIDA, Defendant–Appellee.**

**No. 87–5186.**

United States Court of Appeals, Eleventh Circuit.

May 20, 1988.

Susan N. Brattebo, Kenneth L. Minerley, Edwards & Angell, Carl Angeloff, Palm Beach, Fla., for plaintiffs-appellants.

Glenn J. Torcivia, Asst. Atty. Gen., West Palm Beach, Fla., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

ESCHBACH, Senior Circuit Judge:

This action was brought by certain present and former employees of the Water Utility Department of Palm Beach County, Florida claiming violations of the minimum wage (29 U.S.C. § 206) and maximum hours/overtime compensation (29 U.S.C. § 207) provisions of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219. The district court dismissed appellants' complaint with prejudice for failure to state a claim upon which relief can be granted. They appeal that dismissal.

I

Appellants filed this suit on January 17, 1986. The complaint arose as a result of the Department's policy, from January 13, 1983 until about October, 1985, of requiring its employees on a rotating basis to remain at home, by their telephones available for immediate call-in to work. The hours spent in this standby duty status were not compensated and they were not considered hours worked for purposes of overtime hours calculation.

Three events that preceded the January 17, 1986 filing of this suit are of significance. First is the 1976 decision of the Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). In *National League of Cities* the Court found a Tenth Amendment–based limitation precluding Congress from exercising its Commerce Clause authority to enforce the minimum wage and overtime compensation provisions of the FLSA against the states and their political subdivisions for the benefit of employees working in areas of traditional governmental functions. 426 U.S. at 853, 96 S.Ct. at 2474. Some nine years later, in *Garcia v. San Antonio Metropolitian Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), the Court expressly overruled *National League of Cities*, and thereby brought all employees of the states and their political

subdivisions within the full coverage of the FLSA.

The final event of importance to this case is the passage in November, 1985 of the Fair Labor Standards Amendments of 1985, Pub.L. No. 99–150, 99 Stat. 787 (1985). Section 2(c)(1) of the 1985 Amendments provided a grace period until April 15, 1986 (one year after the mandate in *Garcia*) during which the states and their political subdivisions could not be sued for minimum wage and maximum hours FLSA violations by employees newly brought under the protection of those provisions of the Act by reason of the Supreme Court's decision in *Garcia*. The relevance and significance of each of these events is addressed in the analysis below.

II

This appeal presents two primary questions. First, we must decide whether the holding of the Supreme Court in *Garcia v. San Antonio Metropolitan Transit Authority, supra,* should be applied retroactively in this case. Second, we must determine whether Section 2(c)(1) of the Fair Labor Standards Amendments of 1985 bars this suit because it was filed before April 15, 1986.

A. The Retroactive Application of *Garcia*

■ As a general rule, courts apply the law in effect at the time they decide a case. *Goodman v. Lukens Steel Co.,* —— U.S. ——, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). *See also Equal Employment Opportunity Commission v. Atlanta Gas Light Company,* 751 F.2d 1188, 1189 (11th Cir.), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 316 (1985); *Acoff v. D.E. Abston,* 762 F.2d 1543, 1548 (11th Cir.1985); *Mineo v. Port Authority of New York and New Jersey,* 779 F.2d 939, 943 (3d Cir.1985). However, as we have observed, this "strong presumption" that judicial decisions are to be applied retroactively can, in certain circumstances, be mitigated. *Camden I. Condominium Association v. Dunkle,* 805 F.2d 1532, 1533–34 (11th Cir.1986).

The test for determining when retroactive application of a judicial decision is not warranted in a civil litigation context is set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *See also United States v. Johnson,* 457 U.S. 537, 563, 102 S.Ct. 2579, 2592, 73 L.Ed. 2d 202 (1982). *Chevron* instructs that three separate factors are to be weighed in deciding the nonretroactivity question.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." 404 U.S. at 106–07, 92 S.Ct. at 355 (citations omitted).

In applying the three-factor *Chevron* test, the party seeking to avoid retroactive application bears the burden of persuasion. *Camden I.,* 805 F.2d at 1534.

During the nine years that *National League of Cities* was the law, any determination of whether the employees of the Water Utility Department were protected by the minimum wage and overtime compensation provisions of the FLSA would have been controlled by the traditional governmental functions test of *National League of Cities.* After *Garcia* was decided, it was absolutely clear that the Department's employees were covered by all provisions of the FLSA, regardless of whether they worked in areas of traditional governmental function. That *Garcia* was a "clear break" from precedent is apparent. *Cf. Acoff,* 762 F.2d at 1543 (articulating the "clear break" doctrine in refusing to grant retrospective effect to a judicial decision

establishing a rule of criminal procedure that was both unanticipated and in conflict with old standards).

It is true that the ambiguous nature of the traditional governmental functions standard relied on in *National League of Cities* left the County, and appellants, unable to definitively determine, without adjudication, whether the Department's employees were within the scope of the Act's protection. Nevertheless, that fact does not preclude us from finding that the Court's express overruling of *National League of Cities* in *Garcia* signaled "an abrupt and fundamental shift in doctrine" that established "an entirely new rule which in effect replaced an older one." *Hanover Shoe, Inc., v. United Shoe Machinery Corp.*, 392 U.S. 481, 498, 88 S.Ct. 2224, 2232, 20 L.Ed.2d 1231 (1968).

Contrary to appellants' claim, *Garcia* was not merely an extension or expansion of an existing doctrine. Rather, it was "an avulsive change which caused the current of the law to flow between new banks." *Hanover*, 392 U.S. at 498, 88 S.Ct. at 2232. Given these facts, and because the Supreme Court's reversal of the *National League of Cities* doctrine was not clearly foreshadowed by developments in the lower courts or otherwise, we can only conclude that the first factor favoring nonretroactive application of *Garcia* is satisfied here. *See Camden I.*, 805 F.2d at 1534; *Atlanta Gas Light Company*, 751 F.2d at 1190.

In applying the second *Chevron* factor we are directed by the Court to "look[ ] to the prior history of the rule in question, its purpose and effect, and [determine] whether retrospective operation will further or retard its operation." 404 U.S. at 106–07, 92 S.Ct. at 355. The appropriate starting point for this inquiry is an attempt to properly characterize the rule of *Garcia* and describe its effect.

There are two ways to conceptualize the rule of *Garcia* and the effect it has. In constitutional terms *Garcia* establishes that the Commerce Clause gives Congress authority to enforce all provisions of the FLSA against the states and their political subdivisions. *See Rhinebarger v. Orr*, 839 F.2d 387 (7th Cir.1988). The core of the Court's concern in *Garcia* was its desire to correct the "depart[ure] from a proper understanding of congressional power under the Commerce Clause" caused by *National League of Cities*, 471 U.S. at 557, 105 S.Ct. at 1201. It sought to readjust the model of "democratic decision making" identified in *National League of Cities* in order to insure "due respect for the reach of congressional power within the federal system." *Id.* In doing so, the Court eliminated what it deemed to be an unworkable and misdirected standard of state and local government immunity from federal law. *Brooks v. Village of Lincolnwood*, 620 F.Supp. 24, 26 (N.D.Ill.1985).

In terms of substantive FLSA law, the effect of *Garcia* is to leave all provisions of the FLSA (including the Act's minimum wage and overtime compensation protections) fully applicable to the states and their political subdivisions. Whether this second dimension of the Court's holding is labeled a "rule" or an "effect", careful analysis of the second *Chevron* factor requires that we also consider whether retroactive application of *Garcia* would further or retard implementation of the FLSA minimum wage and overtime compensation guarantees in state and local governments.

By expressly reversing *National League of Cities* and rejecting the traditional governmental function standard upon which its view of the Commerce Clause/state sovereignty balance rested, the Court automatically effectuated the constitutional dimension of the rule of *Garcia*. The rule is clear and it was put firmly into place by the Court's opinion. There is no reason to believe that retroactive application of *Garcia* would in any way further the implementation or operation of this dimension of the holding in that case.

We have been presented with no reason to infer that the County or other units of state and local government will be more likely to comply with the minimum wage and overtime compensation provisions of the FLSA if *Garcia* is given retroactive application in this case. Instead, we per-

ceive at least two good reasons why retroactive application would not further and might well hinder proper implementation of the holding in *Garcia* as it pertains to those aspects of substantive FLSA law. Prior to the ruling in *Garcia* the pay and benefit packages of public employees who were deemed to not be protected by the Act were undoubtedly formulated based on the presumption that no extra monetary compensation would be received for overtime work. Because the financial resources available to units of state and local governments are finite, after *Garcia's* effective date, those entities were obliged to realign the compensation packages of their employees who work overtime.

Retrospective application of *Garcia* in this case would result in appellants receiving monies for overtime wages during a period in which their compensation was calculated on the presumption that no extra income would be realized through overtime pay. To make such a retroactive readjustment of appellants' compensation packages would result in their being granted a windfall. That outcome would do nothing to further the effectuation of the expanded FLSA coverage achieved by *Garcia*. In fact, the strain on the County's resources that retroactive application of *Garcia* would cause might well hinder the County's ability, at least in the short-run future, to provide for the overtime compensation *Garcia* commands. *See Kukla v. Village of Antioch,* 647 F.Supp. 799, 814 (N.D.Ill. 1986); *Thurmond v. City of Union City, Tennessee,* 628 F.Supp. 146, 148 (W.D. Tenn.1986); *Brooks,* 620 F.Supp. at 26. As with the first dimension of the *Garcia* holding, we find nothing here to suggest that retroactive application is indicated by the second *Chevron* factor.[1]

In the final component of the *Chevron* analysis we are instructed that if retroactive application of a decision of the Court would produce substantial inequitible results, a holding of non-retroactivity is implied. 404 U.S. at 107, 92 S.Ct. at 355. *See also Williams v. City of Atlanta,* 794 F.2d 624, 628 (11th Cir.1986). On first view, the injustice of holding a government employer to a rule that did not exist at the time of its challenged actions (the result that retroactive application of *Garcia* would produce in this case) seems apparent. *See Thurmond,* 628 F.Supp. at 148, *Brooks,* 620 F.Supp. at 26. Regardless, appellants believe no substantial inequity would result from a finding of retroactivity.

The key to appellants' claim is their belief that any reliance by the County on *National League of Cities* as a basis for refusing to compensate them for the hours spent on standby duty was founded on an incorrect application of the erstwhile traditional governmental function standard for exclusion from FLSA coverage. On the other side of the substantial inequity balance, appellants also submit that failure to give *Garcia* retroactive effect would unjustly deny them compensation to which they are statutorily entitled.

It is true that the County's apparent determination that the Water Utility Department fell under the traditional governmental functions rubric of *National League of Cities* may or may not have been correct.[2] Nevertheless, *Chevron* speaks only to precedent "on which litigants may have relied" and cannot be read as requiring a litigant who claims reliance on overturned precedent to prove that its reliance was necessarily founded on a correct interpretation of that case law. 404 U.S. at 106, 92 S.Ct. at 357. We believe that proper application of the third *Chevron* factor requires only that such reliance on existing precedent have been reasonable.

---

1. It is interesting to note that retroactive application of *Garcia* in this case would result in annulment of the grace period established by Section 2(c)(1) of the Fair Labor Standards Amendments of 1985 that delays enforcement of *Garcia* until April 15, 1986. Our subsequent discussion of the Fair Labor Standards Amendments of 1985 reveals that Section 2(c)(1) was intended to provide units of state and local government with a short period of transition in which to accomplish any reordering of budget priorities made necessary by *Garcia.*

2. We expressly decline to address this question on the present record.

During the period from January, 1983 until October, 1985 the County was faced with an unresolved issue of law raised by the test for FLSA coverage established by *National League of Cities.* The County had to decide whether the controlling FLSA precedent required it to compensate appellants for standby duty time. Given the need for action, it did not have the luxury of awaiting a definitive resolution of that question of law from the courts. It made a decision, that even if ultimately determined to have been incorrect, was reasonable in light of the ambiguity of the standard it was at that time confronted with.

Adoption of appellants' theory as the basis for a retroactive application of *Garcia,* would result in the County being penalized for having made a decision founded on an interpretation of then-existing law that cannot, based on the record before us, be said to have been indefensible. Common sense requires us to consider the legal and administrative milieu in which the County's challenged actions took place. We cannot penalize the County for having made a judgment call necessitated by a combination of the press of conducting the Water Utility Department's business and the state of the prevailing law. *See Mineo,* 779 F.2d at 946. Substantial inequity to the County would result if we held it to a rule that did not exist during the period in which its challenged actions transpired. *Brooks,* 620 F.Supp. at 26.

Before April 15, 1986 appellants' right to FLSA protection was determined by the *National League of Cities* standard.[3] The Court's decision in *Garcia* to overrule the view of the Commerce Clause embraced in *National League of Cities,* and the concomitant rejection of its unworkable standard for determining the scope of the FLSA's reach in state and local government, did nothing to alter that reality. Retrospective application of *Garcia* in this case would result in appellants' FLSA rights during the period in dispute being determined on the basis of a rule that did not exist at that time. Because of the

clearly incongruous nature of such a result, a refusal to give retroactive effect to *Garcia* in this case does not subject appellants to substantial inequity.

Based on our analysis of the three *Chevron* factors we are lead invariably to the conclusion that retroactive application of the rule of *Garcia* is not warranted in this case. To the extent that the district court's dismissal of appellants' complaint was based on its finding that *Garcia* should not be given retroactive application in this case, that dismissal did not constitute error.

**B. The Effect of Section 2(c)(1) of the 1985 Amendments**

■ The above holding notwithstanding, we must still evaluate the second basis relied upon by the district court in dismissing appellants' complaint with prejudice. The district court believed that dismissal with prejudice was warranted, in part, because this action was filed on January 17, 1986, well before the expiration of the April 15, 1986 grace period granted the states and their political subdivisions by Section 2(c)(1) of the Fair Labor Standards Amendments of 1985.

Section 2(c)(1) of the 1985 Amendments states:

No State, political subdivision of a State, or interstate governmental agency shall be liable under section 16 of the Fair Labor Standards Act of 1938 for a violation of section 6 ..., 7 or 11(c) (as it relates to section 7) of such Act occurring before April 15, 1986, *with respect to any employee of the State, political subdivision, or agency who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985, and published in sections 775.2 and 775.4 of title 29 of the Code of Federal Regulations.* [sic] (emphasis supplied)

The portion of the statutory language underlined above establishes that the only FLSA suits Section 2(c)(1) bars are those

---

**3.** Our subsequent analysis will demonstrate that Section 2(c)(1) of the Fair Labor Standards Amendments of 1985 effectively postponed implementation of the *Garcia* mandate until April 15, 1986.

brought by employees of the states and their political subdivisions who would not have come under the coverage of the Act as defined by the terms of the special [FLSA] enforcement policy articulated in 29 C.F.R. §§ 775.2 and 775.4. Those two Department of Labor Regulations restate the test for FLSA minimum wage/overtime compensation set in *National League of Cities* and attempt to clarify what functions of state and local government fell under the traditional governmental functions rubric relied upon in that case.[4]

The very words of Section 2(c)(1) demonstrate that the April 15, 1986 chronological threshold it sets for certain FLSA enforcement actions was not intended to limit the ability of state and local government employees working outside areas of traditional governmental function to bring suit to enforce the minimum wage/overtime compensation protections afforded them by the FLSA. On its face Section 2(c)(1) of the 1985 Fair Labor Standards Amendments bars this action only if the plaintiffs were employed in areas of traditional governmental function.

The relevant legislative history pertaining to the 1985 Amendments is completely consistent with this reading of Section 2(c)(1). It leaves no doubt that *Garcia* was the catalyst for the 1985 Amendments. In addition, that history makes clear that one of the purposes of the Amendments was to provide lead-time to state and local governments so that they might complete the reordering of their budgetary priorities made necessary by *Garcia* while maintaining fiscal stability. S.REP. No. 99–159 at 6–8, 99th Cong. 1st Sess. 2, *reprinted in* U.S.CODE CONG. & AD.NEWS, 651, 654–656 (1985).[5] Given these facts, we can only conclude that Section 2(c)(1) of the Fair Labor Standards Amendments of 1985 does not bar appellants from pursuing this FLSA enforcement action, provided they can establish that the work they performed during the period at issue did not fall within an area of traditional governmental function.

The district court made no finding as to whether appellants work in areas of traditional governmental function. Given the

**4.** The relevant portion of 29 C.F.R. § 775.2 states:

> (a) On June 24, 1976, the United States Supreme Court ruled in *National League of Cities, et al. v. Usery*, 426 U.S. 833 [96 S.Ct. 2465, 49 L.Ed.2d 245 (1976)], that the minimum wage and overtime compensation provisions of the Fair Labor Standards Act (FLSA) are not constitutionally applicable to the integral operations of the States and their political subdivisions in areas of traditional governmental functions. Such areas include, among others, schools and hospitals, fire prevention, police protection, sanitation, public health, and parks and recreation. They do not include, among others, the operation of a railroad by a State, 426 U.S. at 854, n. 18 [96 S.Ct. at 2475, n. 18].

29 C.F.R. § 775.4 states in its entirety:

> (a) In the *National League* decision, it was made clear that schools and hospitals, fire prevention, police protection, sanitation, public health, and parks and recreation are traditional functions or activities of States and their political subdivisions.
> (b) In addition, the Administrator [of the Wage and Hour Division of the Department of Labor] has determined that the following functions of a State or its political subdivisions are traditional. (From time to time, this section will be amended to list other such functions determined to be traditional.)
> (1) Libraries

(2) Museums

**5.** The primary bases for this assertion are found in the following two excerpts from this portion of S.REP. No. 99–159:

> In particular, in the wake of *Garcia*, the States and their political subdivisions have identified several respects in which they would be injured by immediate application of the FLSA. This legislation responds to these concerns by adjusting certain FLSA principles with respect to employees of states and their political subdivisions and by deferring the effective date of certain provisions of the FLSA insofar as they apply to the States and their political subdivisions.
>
> . . . . .
>
> Jurisdictions that had relied for a decade upon the exemptions accorded under *National League of Cities* would be required to meet FLSA standards immediately under *Garcia*. Although many jurisdictions commendably and successfully have undertaken to do so, others have expressed an urgent need for lead-time in which to reorder their budgetary priorities while maintaining fiscal stability. As the Committee did under the 1974 amendments, it has again allowed for lead-time for state and local governments to comply with the FLSA requirements.

state of this record it could not. A more complete record is required to make the determination called for by Section 2(c)(1). For that same reason we are precluded from addressing this question. Nevertheless, the district court did err in concluding that appellants' action was barred by Section 2(c)(1) of the 1985 Amendments without first determining whether they work in areas of traditional government function as contemplated by *National League of Cities* and 29 C.F.R. §§ 775.2 and 775.4. Accordingly, we will remand to the district court for further consideration.[6]

### III

This case is remanded to the district court for whatever further proceedings it deems necessary consistent with the analysis and holdings above.

---

**6.** We are aware of the recent holding in *Garcia v. San Antonio Metropolitan Transit Authority (SAMTA II),* 838 F.2d 1411 (5th Cir.1988) which decided the appeal of the district court's grant of summary judgment for the Authority on remand from the Supreme Court's decision in *Garcia, supra.* In that opinion, the Fifth Circuit refused to "determine under the first prong of *Chevron* whether mass transit would have been exempted from the FLSA under the [*National League of Cities*] doctrine." The Court's unwillingness to review the district court's earlier application of the traditional governmental function test arose in the course of deciding whether to give the Supreme Court's newly-articulated view of the reach of §§ 206 and 207 of the FLSA in state and local government retroactive effect on remand in the very case in which that new rule was set down. That is a different context from the one in which the *National League of Cities* standard will be applied on remand in this case. Consequently, we see no direct conflict between the result reached here and the above-cited opinion of the Fifth Circuit.

The preceding observation notwithstanding, it is arguable that *SAMTA II* can be read to stand for the proposition that the Supreme Court's decision in *Garcia* effectively bars application of the traditional governmental functions test in a suit filed after the April 15, 1985 mandate in that case. We do not read *Garcia* in that manner. It is true that *Garcia* prospectively swept away the unworkable traditional governmental function test for FLSA coverage in state and local government. Nevertheless, the Supreme Court's rejection of the troublesome *National League of Cities* standard did not somehow erase the protection the Act afforded individuals working in areas outside of the traditional governmental function sphere prior to the April 15, 1985 mandate in *Garcia.*

*Garcia* cannot properly be applied retroactively in this case and Section 2(c)(1) of the 1985 Fair Labor Standards Amendments bars enforcement of the *Garcia* mandate in FLSA suits filed before April 15, 1986. Consequently, the sole remaining measure of the scope of the FLSA's pre–April 15, 1986 minimum wage/overtime compensation protections in state and local government is that provided by the *National League of Cities* traditional governmental functions test. Prior to the April 15, 1986 expiration of the Section 2(c)(1) grace period delaying enforcement of the *Garcia* redefinition of the scope of the FLSA's reach, only those individuals protected under *National League of Cities* could sue to enforce their right to the Acts' minimum wage and overtime compensation protections. If we were to hold that the traditional governmental functions criterion could not be applied on remand, appellants' FLSA claim would effectively be mooted without a determination having been made as to whether they were covered by the Act during the period of time their suit covers. That is an incongruous result we cannot embrace.