Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

DAVID T. SAUNDERS CONSTRUCTION CO., INC., Defendant

Civ. A. No. 91–12472–K.

United States District Court, D. Massachusetts.

Oct. 13, 1992.

James Glickman, U.S. Dept. of Labor/Secretary of Labor, Boston, MA, for plaintiff.

Richard D. Wayne, Hinckley, Allen, Snyder & Comen, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

KEETON, District Judge.

This is a Fair Labor Standards Act action. Now before the court are: (1) plaintiff's motion for partial summary judgment, and accompanying memorandum and affidavit (Docket Nos. 6, 7, and 9, filed March 23, 1992); (2) defendant's opposition and accompanying affidavit (Docket Nos. 14 and 15, filed May 21, 1992); (3) plaintiff's reply (Docket No. 17, filed June 4, 1992); and (4) each party's motion for oral argument (Docket Nos. 8 and 13). For the reasons that follow, the motion for partial summary judgment is allowed in part and denied in part. The parties' positions having been fully noted in the written submissions, I conclude that oral argument is not warranted; the motion and request for oral argument are denied.

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, requires that employees be paid time and one-half for hours worked over 40 per week. 29 U.S.C. § 207(a). An

employer may pay fixed weekly compensation without calculating overtime, however, if the requirements of 29 U.S.C. § 207(f) are met. Plaintiff moves for summary judgment: (1) determining that defendant's employment contracts do not meet the 29 U.S.C. § 207(f) exemption requirements; (2) assessing damages against defendant for failing to comply with 29 U.S.C. § 207(a); (3) determining that defendant lacked good faith in forming the contract and assessing liquidated damages under 29 U.S.C. § 216(b); and (4) granting a prospective injunction against future violations. For the reasons stated below, a partial summary judgment determining that the contract fails to meet the requirements of 29 U.S.C. § 207(f) is granted. Neither party, however, proposed an acceptable measure of damages. Consequently, I direct the parties to confer on the amount of damages using a measure in accordance with this memorandum. Summary judgment for liability on liquidated damages is denied. Summary judgment for a prospective injunction is denied.

## I. Introduction.

This civil action arises from an investigation of defendant by the Wage and Hour Division of the U.S. Department of Labor. Plaintiff alleges that defendant failed to pay overtime at work sites in Massachusetts and New Hampshire. This motion for partial summary judgment concerns failure to pay overtime only at a Hanover, New Hampshire work site.

The following facts are undisputed. One hundred thirty-seven employees worked at the New Hampshire site. Each employee signed a form contract. A copy of the form is attached to the Loria affidavit, Exhibit "A" (Docket No. 9). The contract specifies a "weekly salary" for a "maximum of fifty (50) hours per week." According to the contract, "[t]his amount includes overtime calculated at one and one-half (1½) times for hours worked in excess of forty (40)." The contract does not specify an hourly rate of pay.

Defendant claims (and for purposes of summary judgment, plaintiff does not dispute) that weekly salaries were set as fol-

lows. First, defendant would negotiate an hourly rate with a prospective employee. Defendant then calculated a weekly salary based on 40 hours at regular pay and 10 hours at time and a half. Defendant then guaranteed pay for 50 hours per week, including 10 hours at the overtime rate, regardless of whether the employee worked a full 50 hours or not. Employees' salaries were prorated for unexcused absences (i.e. one-fifth of the weekly salary was subtracted for each day of unexcused absence). Raises were given in $25.00 or $50.00 increments to the weekly salary.

Under the contract, an employee who worked more than 50 hours per week did not immediately receive any additional overtime pay. Instead, when the employment terminated, the employee would receive additional pay only for hours worked beyond a 50 hours per week average over the entire course of the employment; an employee who averaged 50 hours or less per week received no additional compensation. At the Hanover site, no employee averaged more than 50 hours per week. Thus, although some employees worked more than 50 hours in some weeks, none received extra pay for those hours. Defendant used the contract from June 9, 1991 to December 15, 1991—27 weeks. Defendant stopped using the contract during plaintiff's investigation, before work was completed at the site.

## II. Summary Judgment Standard.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the "responsibility of suggesting" the absence of a genuine issue of material fact. *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 228 (1st Cir. 1992); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court then considers the record "in the light most favorable to the party opposing the motion and must

indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983).

To defeat a motion for summary judgment "the non-moving party must demonstrate the existence of a genuine issue of material fact pertaining to those issues on which it would have the burden of proof at trial." *Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1171 (1st Cir.1988). Here, defendant has the burden to prove it is exempt from 29 U.S.C. § 207(a) through application of § 207(f). *See Donovan v. Brown Equip. & Serv. Tools Inc.*, 666 F.2d 148, 153 (5th Cir.1982).

A genuine issue of fact is "one in which the party opposing summary judgment provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Perez De La Cruz v. Crowley Towing and Transp. Co.*, 807 F.2d 1084, 1086 (1st Cir.1986) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2182, 95 L.Ed.2d 838 (1987).

### III. § 207(f) Requirements.

#### A. In General.

 Contracts satisfying the § 207(f) requirements are referred to as *"Belo* contracts," after the Supreme Court case that inspired enactment of § 207(f). *See Walling v. A.H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716 (1942). *Belo* contracts are exceptions to the overtime requirements. The standards for establishing *Belo* contracts are "to be narrowly construed against the employer asserting them." *Brown Equip.*, 666 F.2d at 153.

29 U.S.C. § 207(f) provides:

No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek ... if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representative of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) speci-

fies a regular rate of pay of not less than the minimum hourly rate ... and compensation at not less than one and one-half times such rate for all hours worked in excess of [the] maximum workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified.

A valid *Belo* contract must, therefore, meet four requirements: 1) bona fide contract, 2) the job necessitates irregular hours of work, 3) the contract specifies a regular rate of pay and at least time and a half overtime, and 4) the contract provides a weekly guaranty (of not more than 60 hours) based on the specified rates. Plaintiff does not challenge the satisfaction of the bona fide contract requirement. Instead, plaintiff charges that the job does not necessitate irregular hours of work, that the contract does not specify a "regular rate of pay," and that the contract fails to provide pay for all overtime hours.

 The Secretary of Labor adopted regulations interpreting § 207, found at 29 C.F.R. § 778.0 *et seq.* The regulations constitute the Department of Labor's interpretation of the statute. They do not bind judicial interpretation. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). The regulations do, however, "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id. See also Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1330 (1st Cir.1977) (although regulations not on point, they suggested the "proper approach").

#### B. Overtime Pay.

 The form of the contract is not disputed by the parties. As a matter of law, I conclude that the contract is not a valid *Belo* contract. A central reason this contract does not qualify as a *Belo* contract is the nature of the contract clause concerning additional overtime pay for hours over 50 per week. This clause provides for additional pay only when the employee *averages* more than 50 hours per week. This prevents the contract from qualifying for

the § 207(f) exemption, because, as a matter of law, it fails to provide "compensation at not less than one and one-half times such rate for *all* hours worked in excess of [the] maximum workweek." 29 U.S.C. § 207(f) (emphasis added).

The contract does not pay employees for any hours over 50 worked in a particular week, unless the employee averages more than 50 hours per week over the entire course of the employment. The Fair Labor Standards Act, however, requires overtime pay for hours worked over 40 in "any workweek." 29 U.S.C. § 207(a). Averaging of workweeks to avoid overtime payments is expressly forbidden in the regulations. 29 C.F.R. § 778.104. Thus, failure to pay for hours worked over 50 in a given week violates the overtime requirements. The contract does not pay overtime "for all hours worked in excess of [the] maximum workweek." 29 U.S.C. § 207(f).

### C. Other Grounds.

Because I grant partial summary judgment for plaintiff on the above ground, I do not reach the other alleged grounds for partial summary judgment.

### IV. Damages.

■ Having decided that defendant's contract does not comply with the statutory exemption requirements of § 207(f), I must decide plaintiff's request for summary judgment on damages. The parties do not dispute how many hours each employee worked in any given week, or how much each was paid. The parties differ on what legal measure of damages is appropriate. Plaintiff suggests dividing an employee's weekly pay by 40 (nonovertime hours per week) to reach a regular hourly rate, then calculating one-half times this rate for each hour worked over 40 in a week. Defendant argues that any award is a windfall to the employees and should be denied. As a fallback position, defendant argues damages should be calculated only for unpaid overtime when an employee worked more than 50 hours in a week.

### A. Defendant's Arguments Rejected.

Defendant argues any award is a windfall because the employees collectively received $69,692.06 more compensation under the guaranty than if each employee had been paid at the hourly rate used in calculating that employee's weekly pay, with individual accounting for overtime. Defendant cites *Foggs v. Block*, 722 F.2d 933 (1st Cir.1983), *rev'd on other grounds sub nom., Atkins v. Parker*, 472 U.S. 115, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985). *Foggs* held inadequate notice for a reduction in food stamp benefits violated due process. The court determined that a remedy ordering back-benefits to people who were not entitled to the benefits (i.e. those whose benefits were properly reduced, absent the inadequate notice) was a windfall. The basis for concern in *Foggs* is not present here. If the contract does not comply with § 207(f), the employees are legally entitled to overtime pay; there is no danger of employees receiving money they are not entitled by statute to receive.

Indeed, allowing defendant to keep the money it should have paid to its employees would be a windfall to defendant. *See Brown Equip.*, 666 F.2d at 158 (defendant benefitted from having money available that is owed to employees as a result of invalid *Belo* plan). For this reason, I conclude that a restitutionary remedy for unpaid overtime is necessary in this case; defendant must pay damages. *See id.* at 157 (failure to order restitutionary remedy was "abuse of [the trial court's] small residue of discretion"). Because I cannot resolve the issue of liquidated damages at summary judgment (see Section V, *infra*), however, entering a restitutionary order now is premature.

Defendant cites two other cases that are readily distinguished. First defendant cites *Ackinclose v. Palm Beach County*, 845 F.2d 931, 936 (11th Cir.1988). *Ackinclose* determined that retroactive application of a new rule of law would produce a windfall. In this case, however, no new rule is invoked. The law existing at the time defendant formed the contracts requires the award of damages. Second, de-

fendant cites *Zumerling v. Devine,* 769 F.2d 745, 753 (Fed.Cir.1985). *Zumerling* held that plaintiffs were requesting a damages measure greater than their legal right—a true windfall. Here, the court will award no more damages than the employees are legally entitled to receive.

In any case, defendant bases its argument on an incorrect premise. Defendant calculates the $69,692.06 figure using its alleged contract rate and alleged overtime pay. In other words, defendant assumes an allocation of regular and overtime pay in accordance with the hourly rates used in calculating the weekly rate in each employee's contract. This assumption is insupportable from the start because it is impossible to know what rates the contracting parties would have agreed upon absent the weekly guaranty.

In addition, when a contract specifying weekly pay fails the requirements of § 207(f), the defendant is not entitled to credit its allocation of regular and overtime pay.

> Section [207(f)] is the only provision of the Act which allows an employer to pay the same total compensation each week to an employee who works overtime and whose hours of work vary from week to week.... Unless the pay arrangements in a particular situation meet the requirements of Section [207(f)] as set forth, *all the compensation received by the employee under a guaranteed pay plan is included in his regular rate and no part of such guaranteed pay may be credited toward overtime compensation due under the Act.* Section [207(f)] is an exemption from the overtime provisions of the Act. No employer will be exempt from the duty of computing overtime compensation for an employee under [§ 207(a)] unless the employee is paid pursuant to a plan which actually meets all the requirements of the exemption.

29 C.F.R. § 778.403 (emphasis added). Courts have applied this provision when the contract fails either because there is no "regular rate" or because the hours of work did not vary from week to week. *See*

*Donovan v. McKissick Prod. Co.,* 719 F.2d 350, 353–4 (10th Cir.1983) (hours not irregular), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 363 (1984); *Marshall v. Hamburg Shirt Corp.,* 577 F.2d 444, 447 (8th Cir.1978) (no regular rate and no irregular hours).

Thus, defendant's argument rests on the false assumption that contractual allocation of regular and overtime pay is effective even when the requirements of § 207(f) are not satisfied. I have determined, as a matter of law, that the contract does not meet the § 207(f) requirements. This determination leads to the further legal conclusion that the purported contract hourly rate is *not* the regular rate of pay for the employment. The regular rate includes payment designated in the agreement as "overtime" payment. *See* 29 C.F.R. § 778.403. *Cf. Hamburg,* 577 F.2d at 447 (fixed weekly salary does not include pay for overtime unless "the strict terms" of § 207(f) are satisfied). If § 207(f) is not satisfied, a contractual allocation of regular and overtime pay has no legal significance.

If courts gave force to an agreed hourly rate in spite of failure to comply with § 207(f), damages would rarely be awarded. For example, assume a contract fails to qualify under § 207(f) because work hours are not irregular, but damages are calculated using the agreed on contract rates and allocation of overtime pay. In this situation, each employee has already received full compensation at the specified regular and overtime rates for the (not irregular) hours he or she worked. No back pay would be owed; any award would be a windfall. *Contra, e.g., Donovan v. Tierra Vista, Inc.,* 796 F.2d 1259, 1260 (10th Cir.1986) (remanding for determination of back-pay because irregular hours requirement not met). Thus, alleged contract rates are not helpful in assessing damages when a § 207(f) requirement is not satisfied. Damages cannot be assessed by using the contractual allocation of regular and overtime pay.

As an alternative to awarding no damages, defendant suggests a collective award of $2680.98. This figure represents

defendant's alleged contractual overtime rate multiplied only by the hours worked in excess of 50 per week. Even if this measure of damages were considered to have some equitable appeal, it cannot be squared with the statute and regulations. Defendant cites no authority in support of this damages measure, and I am aware of none. In effect, as with defendant's windfall argument, this argument asks the court to give legal effect to the alleged contract rate, even though the contract does not qualify for § 207(f) exemption. The argument assumes defendant's employees received full overtime pay for hours under 50 per week. Defendant is not, however, entitled to the contractual allocation of overtime pay for hours under 50 unless the "strict terms" of § 207(f) are met. *Hamburg*, 577 F.2d at 447; 29 C.F.R. § 778.403.

### B. Case Law on the Measure of Damages.

To calculate overtime pay owed an employee, the employee's "regular rate" must first be calculated. This rate represents each employee's nonovertime hourly rate. *See* 29 C.F.R. § 778.109. Once the regular rate is calculated, total unpaid overtime is calculated using one and one-half times the regular rate as the overtime rate.

Under existing case law, there is support for two distinct ways to calculate the "regular rate."

### 1. Week-by-week fluctuating regular rate method.

■ The first method of calculating a "regular rate" applies if the employee is paid a fixed weekly salary no matter how many hours the employee worked. Under this first method, damages are calculated as follows. A separate "regular rate" is computed for each week. For each week, each employee's regular rate is calculated by dividing the employee's total pay by the number of hours the employee *actually worked that week:* (regular rate) = (total pay)/(hours actually worked). *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682 (1942); *Martin v. Tango's Restau-*

*rant, Inc.*, 969 F.2d 1319, 1324 (1st Cir. 1992); 29 C.F.R. §§ 778.109, 778.114(a).

Under this method, the "regular rate" varies from week to week, depending on the number of hours worked. *Overnight Motor*, 316 U.S. at 580, 62 S.Ct. at 1221. Under this method of calculation, each employee is considered to have been paid each week at the "regular rate" for that week, for all hours worked in that week. The employee is owed additional half-time compensation for all hours worked over 40 in that week. *See Tango's*, 969 F.2d at 1324.

Under this method, damages are calculated for each week by multiplying half the regular rate for that week times the number of hours worked in excess of 40 in that week: $(\frac{1}{2}) \times$ (regular rate that week) $\times$ (hours over 40 that week). *See id.; Hamburg*, 577 F.2d at 447. This must be done for each employee, and the calculation must take account of all hours in each week in which the employee worked more than 40 hours. *Hamburg*, 577 F.2d at 447. *See Overnight Motor*, 316 U.S. at 580, 62 S.Ct. at 1221. The First Circuit has, in *dicta*, recognized this damages measure for failed *Belo* contracts, *see Eastern Sugar Assoc. v. Pena*, 222 F.2d 934, 938 (1st Cir.1955), *cert. denied*, 350 U.S. 900, 76 S.Ct. 178, 100 L.Ed. 791 (1955), and has recently described *Overnight Motor*'s outcome as "binding" in discussing application of the "[*Overnight* formula] for computing overtime compensation in the case of employees paid a 'fixed weekly salary for fluctuating hours.'" *Tango's*, 969 F.2d at 1324 (citation omitted).

### 2. Uniform regular rate method.

■ Some courts apply a different damages measure if the contract manifested an intent that the fixed weekly salary be compensation for a specific number of hours (e.g. 50 hours), as opposed to compensation for *however many hours* are actually worked. By this method, the regular rate is calculated by dividing the total pay by the stated hours of compensation. *See Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345, 1349 n. 5 (10th Cir.1986); *Hodgson v. Elm Hill Meats of Ky., Inc.*, 327

F.Supp. 1009, 1015–6 (E.D.Ky.1971), *aff'd,* 463 F.2d 1186 (6th Cir.1972); 29 C.F.R. § 778.113(a). As applied to the present case, for example, the stated number of hours would be 50. The "regular rate" under this method is constant for all weeks, no matter how many hours were actually worked in any week.

Under this method, calculation of total unpaid overtime begins with computing additional compensation at half this regular rate for each hour in excess of 40, but less than 50, actually worked in a week. Next, an additional one and one-half times the regular rate is added for hours actually worked over 50 in any week, because these hours have not been compensated at all (given the manifested intent that the salary only covered 50 hours). *See id.*

■■■■ To determine whether the second measure would be appropriate, I must determine whether the contract manifested an intent to compensate a fixed number of hours each week. Contract interpretation is a matter of law, absent some fact-related ambiguity in the contract. *See Canal Elec. Co. v. Westinghouse Elec. Co.,* 973 F.2d 988, 992 (1st Cir.1992); *Baker v. McCarthy,* 122 N.H. 171, 443 A.2d 138, 140 (1982). No fact-related ambiguity need be resolved in this case. The contract specifies a "weekly salary." According to the contract, hours of work might vary and employees would be required to work no more than 50 hours per week. If (and only if) an employee averaged more than 50 hours per week over the course of employment, additional compensation would be paid for the hours over a 50–per–week average. As a matter of law, therefore, I conclude that the contract manifested an intent to compensate at the stated weekly amount, regardless of how many hours were actually worked, up to a 50 hour per week average. In fact, no employee averaged more than 50 hours per week. Consequently, the contract manifested an intent that the weekly payment compensate (and under the undisputed facts had the effect of compensating) not for a fixed number of hours, but for however many hours an employee worked.

In light of this legal interpretation of the contract, the cases applying the second measure of damages do not apply to this case. In *Crenshaw,* the contract involved an oral contract for a "60 hour work week." 798 F.2d at 1348. Although the hours did fluctuate, they fluctuated at times well above the 60 hour workweek. *See id.* at 1348 n. 2 (example of fluctuation from 61 hours one week to 119 hours the next). The parties in *Elm Hill Meats* agreed on 55 hours of work per week and employees actually averaged 60 hours per week. 327 F.Supp. at 1015. As a matter of contract interpretation in this case, defendant and its employees did not agree to a 50 hour workweek. Rather, they agreed to a weekly salary for whatever hours were worked, with weekly hours averaging some amount *no greater than* 50 hours per week.

### 3. Conclusion as to "regular rate."

■■■■ Consequently, defendant must pay damages according to the first measure described above, *i.e.* using a regular rate computed for each week by dividing total pay by the hours actually worked that week. Although the data to be used in calculating this measure of damages do not appear to be disputed by the parties, the court cannot determine the amount without painstaking independent analysis of the database printouts submitted to the court. (Indeed, it is possible the two measures described above lead to the same damages figure, mooting the decision on which measure should be applied in this case.) The parties will be directed to confer on the calculation of the amount of damages owed, using the first method of computation.

### C. Other Arguments Rejected.

■■■■ Plaintiff suggests calculating regular rate by dividing total pay by 40 hours per week. If plaintiff means to request a determination as a matter of law that defendant and its employees manifested an intent that the weekly salary was compensation for only 40 hours per week, that request must be denied. No case law ap-

pears to support such a contention. Plaintiff cites *Hamburg*. *Hamburg* divided total pay by number of hours *actually worked*—not 40. 577 F.2d at 447. Moreover, the *Zumerling* court rejected a proposal similar to plaintiff's as creating a windfall to plaintiff-firemen. 769 F.2d at 753. The First Circuit has also distinguished federal labor law, requiring division of total pay by the *actual hours* worked, from Puerto Rican law requiring division by 40, implicitly rejecting plaintiff's claimed federal measure of damages. *See Eastern Sugar Assoc.*, 222 F.2d at 938 (1st Cir.1955). Plaintiff's measure of damages must be rejected.

■ Defendant raises two arguments on calculating regular rate that must also be rejected. First, defendant argues pay allocated in the contract as overtime pay must be excluded from the total pay used to calculate regular rate. Defendant cites 29 U.S.C. § 207(e). Section 207(e)(5) says that "extra compensation provided by a premium rate paid for certain hours worked by the employee in any … workweek because such hours are … in excess of the maximum [40 hour] workweek" is not included in the calculation of regular rate.

This argument is flatly in conflict with 29 C.F.R. § 778.403. The regulation forbids crediting of overtime pay in failed *Belo* contracts. The argument also conflicts with case law declining to make such a credit. *E.g. Hamburg*, 577 F.2d at 447 ("all of the guaranteed salary must be included in the regular compensation for each employee"). Defendant cites no cases that support its position, and I am aware of none.

In any event, this argument is rejected for the same reason as defendant's other damages arguments. The argument assumes that the contractual rates have a legal effect under § 207 and that the associated overtime premium is legitimate. When a contract fails the requirements for a valid *Belo* contract, however, the contractual allocation of regular and overtime pay has no legal effect. Except under the provision of § 207(f), defendant is not entitled

to credit for overtime allegedly paid in a weekly salary.

Defendant also argues that the calculation impermissibly includes pay for idle hours. This argument is rejected for the same reasons; a purported contractual allocation of pay for idle hours in a failed *Belo* contract is not legally effective.

### D. Conclusion.

Neither party proposed the proper measure of unpaid overtime wages. Although a damages determination may be amenable to summary judgment and potentially could be calculated from the extensive database listings submitted to the court, I am unable to make those calculations, with confidence in their accuracy, from the printed materials the parties have submitted. Consequently, the parties are directed to confer on the amount of back-pay owed. If the parties can reach an agreement, they may file a joint proposal or stipulation on amount of back-pay owed, on or before *November 6, 1992.* If the parties are unable to reach agreement, they may file separate submissions on or before *November 13, 1992.*

### V. Liquidated Damages and Prospective Injunction.

The final issues before the court are plaintiff's request for summary judgment that defendant did not act in good faith, an award of liquidated damages under 29 U.S.C. § 216(b), and a prospective injunction.

■ Liquidated damages *must* be awarded unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [defendant] had reasonable grounds for believing that his act or omission was not a violation …" 29 U.S.C. § 260. If defendant makes this showing, the amount of liquidated damages is left to the sound discretion of the court. *Id.* To prove good faith, defendant must prove both "an honest intention to ascertain and follow the dictates of the [Fair Labor Standards Act]," and that defendant's position was "objectively reasonable." *Hultgren v.*

*County of Lancaster,* 913 F.2d 498, 509 (8th Cir.1990). Determination of an employer's intention and the existence or non-existence of a reasonable basis for its opinion are fact determinations requiring "familiarity with both the problems and the parties." *Brock v. Claridge Hotel & Casino,* 846 F.2d 180, 187–8 (3d Cir.1988), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988).

 Plaintiff contends there is no real factual dispute: the form of the contract is not disputed; it is not disputed that defendant's accountant formed the contract; and defendant's president admitted to an investigation officer that he did not think the plan would work (Loria Aff. ¶ 5).

Defendant maintains the contract was a valid *Belo* contract or at least there were reasonable grounds for believing so, and defendant's accountant assured defendant the contract was legal. Defendant denies any admission to Loria. (Saunders Aff. ¶ 54).

Based on the materials before me, I am unable to resolve this factual dispute by summary judgment. In some cases, acting on advice of counsel, *e.g. Hultgren,* 913 F.2d at 509, or an accountant, *e.g. Lane v. M's Pub, Inc.,* 435 F.Supp. 917, 920 (D.Neb. 1977), is sufficient for a defendant to establish good faith. Based on the evidence described above, reasonable factfinders could reach differing conclusions on defendant's claimed good faith.

 In addition to a restitutionary order for unpaid overtime and liquidated damages, plaintiff requests a prospective injunction barring future violations of the Fair Labor Standards Act. Prospective injunctions are discretionary, based on the nature of the employer's previous conduct and the dependability of promises for future compliance. *See Brown Equip.,* 666 F.2d at 158. A defendant's voluntary abandonment of a disputed contract, as defendant did here, is a sign that a prospective injunction is not needed. *See id.* Based only on undisputed evidence before me, I cannot hold that as a matter of law a prospective injunction is necessary to as-

sure defendant's future compliance with the Act.

### ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Plaintiff's motion for partial summary judgment, (Docket No. 6) is ALLOWED–IN–PART and DENIED–IN–PART.

(2) Plaintiff's request for oral argument (Docket No. 8) and defendant's motion for oral argument (Docket No. 13) are DENIED.

(3) A conference is scheduled to resolve as many as possible of the issues remaining for determination and to schedule any additional proceedings required for final disposition of this case.