Parisi v. Salem                         CV-95-67-JD    02/20/97
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE

Paul J. Parisi, et al.

        v.                              Civil No. 95-67-JD

Town of Salem


                              O R D E R


        The plaintiffs, employees of the fire department of the town

of Salem, New Hampshire, brought this action asserting that the

town's method of computing overtime payments violates the Fair

Labor Standards Act, New Hampshire law, and the collective

bargaining agreement between the plaintiffs' union and the town.

Before the court are the motions for summary judgment of

defendant (document no. 10) and of the plaintiffs (document nos.

11 & 13).



                             Background

        The facts relevant to this case are not in dispute.  Fifty-

six of the sixty-two plaintiffs in this case are current or

former fire protection employees, i.e., firefighters,

lieutenants, and captains.  Pursuant to a collective bargaining

agreement ("CBA") between the town and the Professional Fire

Fighters of Salem, fire protection employees are assigned to work

either thirty-four, thirty-eight, or forty-eight hours per week.

For four weeks during each eight-week period, fire protection employees are assigned to two fourteen-hour shifts and two ten-hour shifts (a total of forty-eight hours). In the remaining four weeks of each eight-week period, fire protection employees spend two weeks during which they are assigned to two fourteen-hour shifts and one ten-hour shift (a total of thirty-eight hours) and two weeks during which they are assigned one fourteen-hour shift and two ten-hour shifts (a total of thirty-four hours).

The remaining six plaintiffs in this case are current or former dispatchers, whose employment relationship with the town also is governed by the CBA. Dispatchers are assigned to eight hour-shifts for four consecutive days, after which they receive two days off. Thus, during each six-week period, dispatchers spend four weeks during which they are assigned to five shifts per week (a total of forty hours), and two weeks during which they are assigned to four shifts per week (a total of thirty-two hours).

Unless they take unpaid leave, the plaintiffs receive the same regular salary each week, regardless of the length of the regular workweek for which they are being compensated, and regardless of whether they take paid leave during the week for

2

which the compensation is intended.[1]  They also receive, <u>inter alia</u>, a nondiscretionary annual longevity bonus each December and a nondiscretionary incentive bonus paid in semi-annual installments.  In addition, the CBA provides that "all hours worked in excess of a regular daily schedule" are to be compensated at 1.5 times the "regular hourly rate of pay."  The town calculates overtime payments pursuant to this provision by multiplying the hours worked by the employee each week in excess of the employee's regular daily schedule by an hourly rate approximately equal to the employee's annual salary (excluding nondiscretionary bonuses) divided by the number of hours to which the employee is assigned annually.  Employees have the choice of accepting or refusing the opportunity to work overtime shifts, which are offered to the employees on a rotating basis.

---

[1]The CBA entitles employees to take between nine and twenty-four shifts of vacation leave annually, depending on their seniority.  In addition, employees are entitled to take twelve holiday shifts, three personal shifts, and fifteen sick leave shifts (eighteen for dispatchers) annually.  Upon separation, the town is required to compensate employees for outstanding vacation leave (up to a maximum of 1.5 times the annual amount the employee receives annually) and outstanding sick leave (only for employees with more than ten years of service and up to a maximum of 90 shifts for fire protection employees and 120 shifts for dispatchers).  Employees who use up their paid leave may take unpaid leave, for each hour of which their base weekly salary is reduced at an hourly rate approximately equal to their annual salary (excluding nondiscretionary bonuses) divided by the number of hours to which they are assigned annually.

On February 8, 1995, the plaintiffs filed this action, asserting that the town was not computing overtime properly under the Fair Labor Standards Act ("FLSA" or "the "Act"), New Hampshire law, or under the CBA because it was not including the nondiscretionary bonuses awarded to the plaintiffs in determining the regular rate of pay, on the basis of which overtime payments are calculated. The town admits that, for purposes of the FLSA, such bonuses are properly included in computation of the regular rate. However, it disputes the manner in which the regular rate must be calculated under the FLSA when such bonuses are included, and claims that, in light of the way it currently pays its employees, the only money due under the FLSA is to plaintiff Brian Chevalier in the amount of $15.75. Both sides have moved for summary judgment on the issue of the appropriate method of calculating the regular rate under the FLSA. In addition, the plaintiffs have moved for summary judgment on their state law claims, which the town contends should be adjudicated in state court.

## Discussion

I. Computation of Overtime Under the Fair Labor Standards Act

Section 7(a)(1) of the FLSA, as amended, provides that

> [e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any

4

workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C.A. § 207(a)(1) (West Supp. 1996). The Act provides an exception to the forty-hour threshold for fire protection employees, who are entitled to earn overtime after working fifty-three hours in a seven-day period. See id. § 207(k)(2) (West Supp. 1996); 29 C.F.R. § 553.230 (1996). Dispatchers are not considered fire protection employees and, accordingly, earn overtime under the Act after forty hours of work.

The "regular rate at which the employee is employed" is determined in light of "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C.A. § 207(e) (West Supp. 1996). However, an employee's total remuneration excludes, inter alia, compensation provided at a premium rate for hours in excess of the employee's regular working hours, see id. § 207(e)(5), which compensation is creditable toward any overtime compensation required by the FLSA. See id. § 207(h) (West Supp. 1996). In other words, where an employer pays compensation at a premium rate for hours worked in excess of the employee's regular schedule, the premium portion of such pay, even if provided to

5

the employee for hours worked below the applicable FLSA threshold, is not properly considered in computing the employee's regular rate under the Act.

The Secretary of Labor, who has promulgated regulations interpreting the Act,[2] explains that the regular rate

> is determined by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.

29 C.F.R. § 109. The Secretary further explains that where an employee's base salary is intended to provide compensation for work performed during an agreed-upon period of time, the regular rate is determined simply by dividing the compensation for the time period by the number of hours of work for which such compensation was intended. See, e.g., 29 C.F.R. § 778.110(a) (employee paid on hourly basis; regular rate is hourly rate); id. § 778.113(a) (employee paid on weekly basis for working specific number of hours; regular rate is base compensation divided by specific number of hours); id. § 778.329 (length of workweek fluctuates according to predictable pattern but base pay is

---

[2] "[W]hile not controlling upon the courts by reason of their authority," these regulations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); accord Martin v. David T. Saunders Constr. Co., 813 F. Supp. 893, 897 (D. Mass. 1992).

always equal and is intended to cover fixed schedule of hours and no more; regular rate equals base weekly compensation divided by number of hours actually worked in a workweek); see also Flores Hernandez v. 65 de Infanteria Thom McAn, Inc. 516 F.2d 1293, 1295 (1st Cir. 1975) (employee's base compensation intended for fixed number of hours; regular rate arrived at by dividing base compensation by fixed number).

However, where an employee receives the same base pay for a time period without regard to the number of hours worked during that time period, the regular rate is determined by dividing the total base pay by the number of hours the employee actually works. See, e.g., Martin v. Tango's Restaurant, Inc., 969 F.2d 1319, 1324 (1st Cir. 1992) (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 (1942)); 29 C.F.R. § 778.114 (employee is compensated on weekly basis, receiving same amount of money but works for different lengths of time; regular rate is weekly compensation divided by number of hours actually worked in workweek). In this latter circumstance, an employee's regular rate decreases as the number of hours actually worked increases. See generally Martin v. David T. Saunders Constr. Co., 813 F. Supp. 893, 900-01 (D. Mass. 1992) (distinguishing between contracts intended to compensate an employee for a set amount of time and contracts providing a fixed weekly salary no matter how

7

many hours the employee works).

The rules promulgated by the Secretary do not change when base compensation includes not only a salary but a bonus payment; the bonus payment is simply included in calculating the regular rate. Thus, where a bonus payment covers only one pay period, "[t]he amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by the total hours worked." 29 C.F.R. § 778.209(a); see also id. § 778.110(b) (worker paid on hourly basis plus bonus; regular rate equals sum of base salary for hours worked and bonus divided by number of hours worked). Where a bonus, although paid in a lump sum, is intended to provide compensation for a period of time longer than a single pay period, for purposes of computing the regular rate the bonus may be apportioned over the period for which it was designed to provide compensation. See id. § 209(a),(b).

In the instant case, the plaintiffs contend that each employee's weekly base compensation (including a pro rata share of the employee's nondiscretionary bonuses) represents compensation solely for the number of hours the employee works, and that, accordingly, the regular rate under the FLSA is computed by dividing the weekly base compensation (including a pro rata share of the nondiscretionary bonuses) by the number of

regularly scheduled hours per week.  The town claims that because each employee receives the same base weekly salary regardless of the length of the workweek to which the employee is assigned, the regular rate under the FLSA is determined by dividing the employee's total weekly compensation (including a pro rata share of the nondiscretionary bonuses but excluding that portion of overtime earnings paid at a premium rate pursuant to the CBA) by the actual number of hours worked in the workweek.

After considering the arguments presented by the parties, the court finds that the arrangement between the parties is governed by 29 C.F.R. § 778.329, and adopts the plaintiffs' formula for computing the employees' regular rate under the FLSA. Notably, the CBA provides that all hours worked in excess of an employee's regular daily schedule are to be compensated at 1.5 times the regular rate.  Because employees receive payment beyond their base weekly compensation for any hours worked beyond their regular schedule and no employee is required to work overtime, it follows that such base weekly compensation is intended to cover the employee's regular scheduled hours, and no more.  Although each employee's hours fluctuate on a weekly basis,[3] these

---

[3]As noted supra, fire protection employees receive the same base weekly compensation regardless of whether they are assigned to thirty-four-hour, thirty-eight-hour, or forty-eight-hour workweeks.  Similarly, dispatchers receive the same base weekly

fluctuations are permanent, occur on a regular basis, and are arranged far in advance. Under these circumstances, an employee's base compensation represents compensation for a specific number of hours (i.e., the number of hours to which he is assigned in a particular week), and, under the regulations promulgated by the Secretary, the proper method of computing the employee's regular rate is determined by dividing the employee's base weekly compensation (including a pro rata share of his nondiscretionary bonuses) by the number of regularly scheduled hours in the employee's workweek. See 29 C.F.R. §§ 778.329, 778.209(a), (b).[4]

The court notes that the town will only have violated the FLSA if, in any single workweek and for any particular plaintiff, the amount of overtime payments required by the Act exceeds the portion of the plaintiffs' total weekly compensation either paid

_____

pay regardless of whether they are assigned to work for thirty-two or forty hours per week.

[4]Although the town has raised a variety of arguments to support their contention that 29 C.F.R. § 778.329 is not applicable to the facts of the instant case, the arguments are unavailing. The court notes that the plaintiffs receive their nondiscretionary bonuses under the CBA regardless of whether they work more than their regularly scheduled hours, and that the CBA provides employees with the option of refusing any overtime assignment. Thus, contrary to the town's assertion, the plaintiffs' nondiscretionary bonuses cannot fairly be characterized as compensation for the portion of the workweek beyond their regularly scheduled hours.

10

at a premium rate pursuant to the CBA or otherwise creditable under the FLSA. See 29 U.S.C.A. § 205(h). Accordingly, the parties are directed to determine whether, in light of the formula adopted above and the undisputed records concerning the hours the plaintiffs worked and the compensation they received, any of the plaintiffs received less than the amount required by the FLSA in any workweek for which claims for payment under the FLSA accrued on or subsequent to February 8, 1992. See Freeman v. National Broad. Co., 846 F. Supp. 1109, 1159 (S.D.N.Y. 1993) ("A cause of action for overtime compensation accrues at each regular payday immediately following the work period during which services were rendered and for which overtime is claimed."), rev'd on other grounds, 80 F.3d 78 (2d Cir. 1996). In addition, the parties shall inform the court whether any money is owing under the FLSA for workweeks for which claims for payment accrued on or subsequent to February 8, 1992, but before February 8, 1993.[5] In the event that the parties' records indicate that any underpayments under the FLSA fall into this category, the court will schedule a hearing to determine whether the violations based on these underpayments were willful and thus subject to the

---

[5]Because the plaintiffs filed their FLSA claims on February 8, 1995, any claims accruing on or subsequent to February 8, 1993, necessarily fall within the Act's general two-year statute of limitations. See 29 U.S.C.A. § 255(a) (West 1985).

11

three-year statute of limitations for willful violations under 29 U.S.C. § 255(a), unless the parties are able to reach an accommodation on this issue, which the court urges them to do.

II.  Plaintiffs' Claims Under State Law

Having adopted the plaintiffs' formula for computing the regular rate under the FLSA, the only unresolved matters concerning the plaintiffs' claim under federal law are what damages, if any, are available to the plaintiffs and whether any FLSA violations committed by the town were willful.  As these inquiries are necessarily limited, the court finds that the remaining claims, which are based entirely on state law, substantially predominate over the remaining federal claims.  See 28 U.S.C.A. § 1367(c)(2) (West 1993).  Accordingly, the court declines to exercise supplemental jurisdiction over the plaintiffs' claims arising under state law.

Conclusion

The defendants' motion for summary judgment (document no. 10) is denied as to the plaintiffs' FLSA claims.  The plaintiffs' motion for summary judgment on their FLSA claims (document no. 13) is granted to the extent described herein.  The court

12

declines to exercise jurisdiction over the plaintiffs' state law claims and they are dismissed without prejudice.

Pursuant to the foregoing opinion, the parties shall file a status report by April 1, 1997, indicating what, if any, issues remain to be resolved or if the case has been settled.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

February 20, 1997

cc:  Richard E. Molan, Esquire
     Michael S. Elwell, Esquire

13